# EXHIBIT C



**RESTATED NOTE**
**(and Schedule to Restated Note)**

$8,200,000.00

Melville, New York
November 20, 2019

**FOR VALUE RECEIVED,** the undersigned **Borrower** hereby jointly and severally promise to pay to the order of **CAPITAL ONE, NATIONAL ASSOCIATION,** or to its successors or assigns (the "**Lender**"), at 1307 Walt Whitman Road, Melville, New York 11747, or at such other place as Lender may designate to Borrower from time to time in writing, the **Principal Amount**, in legal tender of the United States, pursuant to the terms hereof.

1. **Defined Terms.**

The following terms shall have the meanings ascribed to such terms below. All other capitalized terms not defined in the text of this Note shall have the meanings ascribed to such terms on the **Schedule to Restated Note** attached hereto and made a part hereof.

"**Event of Default**" shall have the meaning set forth in the Mortgage.

"**Gap Note**" shall mean that certain Gap Note executed by Borrower of even date herewith in the amount of $1,199,312.25.

"**Guaranty**" shall mean that certain Guaranty of Recourse Obligations of Borrower of even date herewith in the Principal Amount made by JASON WISOTSKY to Lender.

"**Loan**" shall mean that certain facility in the Principal Amount evidenced by this Note and secured by, among other things, the Mortgage and the other Loan Documents.

"**Loan Documents**" shall mean this Note, the Mortgage (as hereinafter defined), the Assignment of Leases and Rents (as defined in the Mortgage), the Guaranty and any other document executed in connection with the Loan.

"**Mortgage**" shall mean that certain Consolidation, Extension, Modification and Security Agreement of even date herewith in the Principal Amount made by Borrower, as Mortgagor, to Lender, as Mortgagee.

"**Prior Notes**" shall mean those certain notes which are respectively secured by those mortgages described on Schedule B attached to the Mortgage.

"**Secured Accounts**" shall have the meaning set forth in the Mortgage.

2. **Interest Rate.**

This Note shall bear interest at the **Interest Rate**. On the **Effective Date**, Borrower shall make a single payment of interest only at the Interest Rate covering interest due hereunder from the Effective Date through the last day of this month, inclusive.

3. **Repayment.**

Commencing on the **First Payment Date** and monthly thereafter on each **Monthly Payment Due Date** to and including the **Final Interest Only Payment Date**, Borrower shall make a **Monthly Interest Only Payment**.
Each **Monthly Interest Only Payment** shall be applied to the payment of interest due, in arrears, at the Interest Rate based on the outstanding Principal Amount.
Commencing on the **Payment Conversion Date** and monthly thereafter on each **Monthly Payment Due Date** until the **Maturity Date**, Borrower shall make a **Monthly Principal & Interest Payment**.
Each Monthly Principal & Interest Payment shall be applied first to the payment of interest due, in arrears, at the Interest Rate and the balance in reduction of principal based upon the **Amortization Period**.

1

6990874.1

The balance of the Principal Amount then remaining unpaid shall become due and payable with any accrued interest remaining unpaid on the Maturity Date.

4. **Automatic Debit.**

Time is of the essence as to all payment dates set forth herein. Every **Monthly Payment** due hereunder shall be made directly to Lender by automatic debit from the **Auto-debit Account** and Borrower hereby unconditionally and irrevocably authorizes Lender to automatically debit the Monthly Payments from the Auto-debit Account. The Monthly Payments are due on the Monthly Payment Due Date; however, Lender agrees to debit the Monthly Payments on the **Auto-debit Date**.

5. **Late Payment Charge.**

If any Monthly Payment is not paid in full during the **Monthly Payment Grace Period** or is not able to be automatically debited on the Auto-debit Date, Borrower shall pay to Lender, upon demand, a **Late Payment Charge** to defray the expense incurred by Lender in handling and processing such delinquent payment and such amount shall be deemed to be secured by the Mortgage. The Late Payment Charge shall not apply to the payment of the unpaid balance of the Principal Amount due on the Maturity Date.

If the balance of collected and available funds in the Auto-debit Account on the Auto-debit Date is less than the amount of the Monthly Payment, a Late Payment Charge shall be applied, notwithstanding any overdraft protection feature associated with the Auto-debit Account, which overdraft protection feature may not be used to make up for a shortfall to pay any Monthly Payments. In such a case, the Monthly Payment shall not be drafted from the Auto-debit Account and Borrower shall remain responsible for same plus the Late Payment Charge and any overdraft fees that may apply.

6. **Extension Option.**

The term of this Note and the Mortgage shall be automatically extended for the **Extended Term** unless Borrower gives Lender written notice, at least thirty (30) days, but not more than ninety (90) days, prior to the Maturity Date that Borrower does not wish to extend the term as herein provided. Notwithstanding the foregoing, Lender shall have the right, but not the obligation, to decline to extend the term of this Note and the Mortgage if: (i) Borrower is in default of any of the terms of this Note (beyond the expiration of any applicable notice and cure periods) and/or an Event of Default has occurred and is continuing beyond the expiration of any applicable notice and cure periods granted in the Mortgage, (ii) Borrower has not furnished all of the information and documentation Borrower is required to furnish to Lender pursuant to this Note and/or the Mortgage including, but not limited to, a then-current rent roll and an income and expense statement for the **Mortgaged Property**, or (iii) Borrower has been late in making the Monthly Payments more than three (3) times in any twelve (12) month period. The Extended Term of this Note and the Mortgage shall have the following terms and conditions:

(A) The interest rate for the Extended Term shall be equal to the **Extended Term Interest Rate**;

(B) The payments shall consist of constant monthly payments of principal and interest calculated at the Extended Term Interest Rate and with principal amortization based upon the **Extended Term Amortization Period**;

(C) The monthly payments shall be payable on the Monthly Payment Due Date and shall be subject to the automatic debit provision set forth in paragraph 4 above commencing on the **Extended Term First Payment Date** and monthly thereafter until the **Extended Maturity Date** when the balance of the Principal Amount then remaining unpaid and any accrued interest thereon shall become due and payable;

(D) Borrower shall be responsible for payment of a one-time tax service fee to Lender in an amount to be determined by Lender prior to the commencement of the Extended Term. This tax service fee shall be automatically debited from the Auto-debit Account; and

(E) In connection with the Extended Term, Borrower shall be responsible for the payment of an **Inspection Fee** to Lender. This Inspection Fee shall be automatically debited from the Auto-debit Account.

7.   **Prepayment Privileges.**

(A)   Upon giving at least thirty (30) days but no more than ninety (90) days prior written notice to Lender of its intention to do so, Borrower shall have the privilege of prepaying the Principal Amount, in whole or in part, in multiples of $100,000.00. In the event that the unpaid balance of the Principal Amount is being prepaid in full, such prepayment shall include interest computed to the date on which any prepayment is made. In the event the prepayment is only a portion of the unpaid balance of the Principal Amount, unless such payment is made on a Monthly Payment Due Date, then such payment shall be deemed to have been made on the next succeeding Monthly Payment Due Date for the purposes of calculating interest due on the Loan. In each case above and in the case of any prepayment of the Principal Amount (whether voluntarily or involuntarily), in addition to the prepayment of the Principal Amount, Borrower shall pay to Lender a prepayment charge (each, a "**Prepayment Charge**") to be computed as provided in Section III, "**Prepayment Charges**" of the attached Schedule to Restated Note.

(B)   Any partial prepayment made hereunder shall be applied in inverse order of maturity and shall not result in any reduction or deferment in the Monthly Payments.

(C)   Notwithstanding the foregoing, (i) Borrower shall have the right to prepay the Principal Amount without a Prepayment Charge during the **Prepayment Window**, and (ii) the Prepayment Charge shall not apply to full or partial repayment of the Principal Amount as a result of the application of Proceeds (as defined in Section 1.05(C)(2) of the Mortgage) or to a partial repayment of the Principal Amount as a result of the application of a condemnation award (as described in Section 1.11 of the Mortgage).

(D)   Notwithstanding anything to the contrary contained herein, Borrower hereby agrees and acknowledges that the Lender is under no obligation to accept partial prepayments of the Principal Amount after and during the continuance of an Event of Default and that the acceptance by Lender (whether intentional or inadvertent) of any payments made by or on behalf of Borrower after and during the continuance of any Event of Default under the Mortgage or other Loan Documents, whether as partial prepayment of the Principal Amount or otherwise shall not be deemed: (i) a reinstatement of the Loan (if an Event of Default has been declared), (ii) an acknowledgment by Lender that such Event of Default has been cured to the satisfaction of Lender, or (iii) a waiver of any of Lender's rights under any of the Loan Documents.

(E)   Any tender of payment by Borrower or any other person or entity of the Principal Amount, other than as expressly provided for herein or in the Mortgage or in any of the Loan Documents, shall constitute a prohibited prepayment. If a prepayment of all or any part of the Principal Amount is made following (i) an Event of Default that results in an acceleration of the Maturity Date, (ii) a prepayment of the entire Principal Amount resulting from a condemnation award, or (iii) in connection with a purchase of the Mortgaged Property or a repayment of the Principal Amount any time before, during or after, a judicial or non-judicial foreclosure or sale of the Mortgaged Property, such prepayment shall be subject to the applicable Prepayment Charge.

8.   **Security for this Note.**

This Note is secured by, among other things, the Mortgage encumbering the Mortgaged Property. The Mortgage specifies various defaults and Events of Default upon the happening of which all sums owing on this Note may, at the option of Lender, be declared immediately due and payable.

9.   **Events of Default; Default Rate.**

In the event of (i) an Event of Default under the Mortgage or any default by Borrower in its obligations under this Note and/or any of the other Loan Documents, or (ii) if the Principal Amount is declared immediately due and payable by Lender pursuant to the provisions of this Note, the Mortgage and/or any of the other Loan Documents, or (iii) if the Principal Amount then remaining unpaid is not paid in full on the Maturity Date or Extended Maturity Date, as applicable, THEN, Borrower shall thereafter pay interest at the **Default Rate** on the Principal Amount then outstanding from the date of such default, Event of Default, or from the Maturity Date or Extended Maturity Date, as applicable, until the date on which the Principal Amount then outstanding, together with all other amounts due under this Note and the Mortgage are

3

6990874.1

paid in full; provided, however, that the Default Rate shall in no event exceed the maximum rate which Borrower may pay by law.

10. **Maximum Rate.**

This Note is subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the Principal Amount due hereunder at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by law to contract or agree to pay. If by the terms of this Note Borrower is at any time required or obligated to pay interest on the Principal Amount or any other sums due hereunder at a rate in excess of such maximum rate, the rate of interest under this Note and/or the Mortgage shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments toward the reduction of principal and not to the interest due hereunder.

11. **Right of Set Off.**

Borrower hereby pledges and grants to Lender a continuing lien, security interest and right of set off as security for all of its liabilities and obligations to Lender, whether now existing or hereafter arising upon and against the Secured Accounts. Lender shall have the right to set off, without notice to Borrower, against any liability or obligation of Borrower including, but not limited to interest, principal, tax and insurance escrows, fees or other charges due in connection with this Note and/or the Mortgage from the Secured Accounts. ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE OBLIGATIONS, PRIOR TO EXERCISING ITS RIGHT OF SET OFF, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

12. **Joint and Several Obligation.**

This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns. If any payment under this Note is not made when due, Borrower agrees to pay all costs of collection when incurred by Lender, including reasonable attorneys' fees (which costs shall be added to the amount due under this Note and shall be receivable therewith).

13. **Recourse Obligations.**

Except for Borrower's indemnity in favor of Lender from and against any actual loss, cost, liability and expense which Lender may incur in connection with: (i) those matters set forth in Section 1.19 of the Mortgage relating to environmental and related concerns; (ii) any acts or omissions constituting fraud or misrepresentation by Borrower in connection with applying for the Loan or in supplying information or documentation to Lender subsequent to the date hereof; (iii) the misappropriation or misapplication of Rents (as defined in the Mortgage) collected at the Mortgaged Property; (iv) the liability for Rents or other income generated from the Mortgaged Property received by Borrower after default under this Note or an Event of Default under the Mortgage and not applied to payments due under this Note or the Mortgage or to ordinary recurring operating expenses of the Mortgaged Property; or (v) deliberate waste of the Mortgaged Property, the liability of Borrower, its permitted successors or assigns, under this Note and/or the Mortgage is hereby strictly limited to the interest of Borrower, its permitted successors or assigns, in the Mortgaged Property and any judgment in favor of Lender shall be satisfied only against the Mortgaged Property and may not be satisfied against any other asset of Borrower, its permitted successors or assigns, and Lender shall neither seek, demand nor be entitled to obtain a deficiency judgment against Borrower. Notwithstanding the foregoing, Lender shall retain full recourse against Borrower and Guarantor (as defined in the Guaranty) for all sums due under this Note and the Mortgage in the event that Borrower commences a voluntary bankruptcy or insolvency proceeding or any involuntary bankruptcy or insolvency proceeding is commenced against Borrower by any person or entity (other than Lender) and Borrower fails to use commercially reasonable, good faith efforts to obtain a dismissal of such proceedings or has acted in collusion with the party commencing such proceedings.

14. **Cost of Collection.**

In the event the Principal Amount or any part thereof shall be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at trial or at the appellate level) or in the event this Note shall be

placed in the hands of internal or external attorneys for collection upon default, Borrower shall pay, in addition to other sums provided hereunder, all costs of collection or costs incurred by Lender in attempting to collect the Principal Amount, including reasonable attorneys' fees and expenses.

15. **Acceleration; Incorporation by Reference.**

It is hereby expressly agreed that the Principal Amount shall become due at the option of the holder hereof on the happening of any Event of Default or any other event by which, under the terms of the Mortgage, said Principal Amount may or shall become due and payable. All of the covenants, conditions and agreements contained in the Mortgage are hereby made part of this instrument with the same force and effect as if fully set forth herein.

16. **Waiver of Presentment.**

All parties to this Note, whether Borrower, principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest, notice of dishonor and all other notices in connection with this Note.

17. **No Oral Modification.**

This Note may not be changed, extended or modified, nor may any term or provision hereof be waived, except by an instrument in writing signed by the party against whom such change, extension, modification, or waiver is sought.

18. **Right to Assign/Participate.**

Lender shall be entitled to assign or participate all or any portion of its interest in this Note and/or the Mortgage at its sole discretion without notice to Borrower, provided that Borrower shall continue to make payments required hereunder to Lender until it has received notice of change of address for payments as provided herein.

19. **Waiver of Jury Trial.**

BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE LOAN, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

20. **Other Judicial Waivers.**
Borrower hereby expressly and unconditionally waives, in connection with any suit, action or proceeding brought by or on behalf of Lender on this Note, any and every right Borrower may have to: (i) interpose any defense based upon any statute of limitations or any claims of laches, (ii) injunctive relief, (iii) interpose any counterclaim therein (other than compulsory counterclaims), and (iv) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit Borrower from instituting or maintaining a separate action against Lender with respect to any asserted claim.

21. **Governing Law; Venue.**

This Note, and the rights and obligations of the parties hereunder, shall in all respects be governed by, and construed and enforced in accordance with the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Borrower hereby irrevocably: (a) agrees that any legal action or proceeding arising out of or relating to this Note may be brought in the courts of the State of New York in any county, or of the United States of America for the Eastern or Southern Districts of New York, as Lender may elect, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which it may have to the laying of venue of any such suit,

5

action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Any such suit, action or proceeding shall be initiated by any method of service provided for under applicable law. Nothing contained herein shall affect the right of Lender to bring any suit, action or proceeding against Borrower or its property in the courts of any other jurisdiction.

22. **Notices.**

All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by certified mail, return receipt requested or overnight mail by a nationally recognized courier, at each party's address herein stated, or at such other address which a party shall have notified the other party in writing pursuant to the requirements herein. Any written notice sent by certified mail, return receipt requested shall be deemed to have been served five (5) days after the date the same is mailed in accordance with the foregoing provisions. Notice sent by overnight carrier shall be deemed to have been served one (1) Business Day after the date same is mailed.

23. **Captions.**

The captions of this Note are inserted merely for the convenience of the parties executing this Note, and in no way are the captions intended to define the meaning and intent of this Note or any of its provisions.

24. **Restatement of Indebtedness.**

This Note is being executed and delivered as a consolidation and restatement of the outstanding indebtedness evidenced by the Gap Note and the Prior Notes. The consolidated indebtedness evidenced by this Note constitutes a total restatement of the indebtedness evidenced by the Prior Notes in the Principal Amount. This Note shall not constitute a cancellation or novation with respect to the indebtedness evidenced by the Prior Notes. Such indebtedness (as heretofore evidenced by the Prior Notes and as hereafter evidenced by this Note) shall continue to be secured by, *inter alia*, the Mortgage without interruption in the lien or priority thereof. Subject to the foregoing provisions, this Note amends, restates and supersedes the Prior Notes and all of the terms set forth therein in their entirety.

[NO FURTHER TEXT ON THIS PAGE]

[Signature Page to Restated Note]

**IN WITNESS WHEREOF**, Borrower has duly executed this Note as of the date first set forth above.

FC 2501 LLC

By: _____
JASON WISOTSKY
Manager

MIZ3 LLC

By: _____
JASON WISOTSKY
~~Manager~~ Authorized Signatory

FC 1191 LLC

By: _____
JASON WISOTSKY
Manager

STATE OF NEW YORK    }
                     }  ss:
COUNTY OF Rockland   }

On the 15 day of November, in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared JASON WISOTSKY, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

AVRAHAM Y OBERMEISTER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OB6146516
Qualified in Rockland County
My Commission Expires 05-22-2022



**SCHEDULE TO RESTATED NOTE**
(Summary of Certain Loan Terms)

| I. | GENERAL PARTY AND MORTGAGED PROPERTY INFORMATION |
|---|---|
| Borrower | FC 2501 LLC, MIZ3 LLC, AND FC 1191 LLC |
| **Property Information** | |
| Mortgaged Property | 2501-2511 Newkirk Avenue a/k/a 417 East 25th Street, Brooklyn, New York |
| County | Kings |
| Section | 16 |
| Block | 5212 |
| Lot | 24 |
| **Borrower's Mailing Addresses** | |
| Borrower's Legal Address (for written notice hereunder and under the Loan Documents) | 62 Rutledge Street, Suite 109, Brooklyn, New York 11249 |
| Borrower's Mailing Address (for monthly invoices and other communication, if different from above) | |
| **Automatic Debit and Auto-debit Account Information** | |
| Auto-debit Account | Capital One Bank Account # 7528924084 |
| Auto-debit Date | The tenth (10th) day of each month; provided, however, if the Auto-debit Date shall occur on a day that is not a Business Day, such payment shall be debited on the Business Day Adjustment Date. |

| II. | MORTGAGE LOAN INFORMATION |
|---|---|
| Effective Date | November 20, 2019 |
| Principal Amount | EIGHT MILLION TWO HUNDRED THOUSAND AND 00/100 ($8,200,000.00) DOLLARS |
| Maturity Date | December 1, 2026 |

1

| Interest Rate | |
|---|---|
| Interest Rate | three and forty one-hundredths (3.40%) percent per annum |
| Interest Accrual Method | 30/360 (computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months). |
| Repayment | |
| First Payment Date | January 1, 2020 |
| Monthly Payment Due Date | the first (1st) day of each month |
| Monthly Interest Only Payment | $23,233.33 |
| Final Interest Only Payment Date | June 1, 2020 |
| Payment Conversion Date | July 1, 2020 |
| Monthly Principal & Interest Payment | $36,365.46.  *However, this principal and interest payment assumes there have been no prepayments of the Principal Amount between the Effective Date and the Final Interest Only Payment Date. Any prepayments of the Principal Amount prior to the Final Interest Only Payment Date shall result in a recalculation of this principal and interest payment. |
| Monthly Payment | A Monthly Principal & Interest Payment or a Monthly Interest Only Payment (as applicable), plus any Monthly Escrow Requirement, plus such other amounts due (if any) on a monthly basis under this Note, the Mortgage and/or any of the other Loan Documents. |
| Amortization Period | 360 months |
| Number of Monthly Payments | 84 |
| Monthly Escrow Requirement | real estate taxes and all other sums due under Section 1.04 of the Mortgage |
| Late Payment Charge | |
| Late Payment Charge | four (4.0%) percent of the Monthly Principal & Interest Payment or Monthly Interest Only Payment (as applicable) |
| Monthly Payment Grace Period | ten (10) days from and including the Monthly Payment Due Date |

6990874.1

| Extension Option | |
|---|---|
| Extended Term | five (5) years |
| Extended Term Interest Rate | <u>the greater of</u>: (i) the Interest Rate, or (ii) the U.S. Treasury Note Yield plus the Extended Term Interest Rate Spread |
| U.S. Treasury Note Yield | The highest weekly average yield on five (5) year U.S. Treasury notes or bonds, using the most recent figure available as of **October 1, 2026** by the Federal Reserve Bank of New York as published by the Wall Street Journal or a comparable publication. |
| Extended Term Interest Rate Spread | 250 basis points |
| Extended Term Amortization Period | 282 months |
| Extended Term First Payment Date | January 1, 2027 |
| Number of Extended Term Monthly Payments | 60 |
| Extended Maturity Date | December 1, 2031 |
| Inspection Fee | $125.00 |
| Default Rate | |
| Default Rate | twenty-four (24.00%) percent per annum |

| III.    PREPAYMENT CHARGES | |
|---|---|
| Loan Year | The period beginning on the Effective Date and ending on the last day of November, 2020, and each successive twelve (12) month period thereafter. |
| Prepayment Window | The 60 days immediately preceding and ending on the Maturity Date and/or the Extended Maturity Date, if any. |
| Prepayment Charges during initial term of this Note | |
| Loan Year 1, Loan Year 2 and Loan Year 3 | 5% of the Principal Amount prepaid |
| Loan Year 4 | 4% of the Principal Amount prepaid |
| Loan Year 5 | 3% of the Principal Amount prepaid |

3

6990874.1

| Loan Year 6 | 2% of the Principal Amount prepaid |
|---|---|
| Loan Year 7 | 1% of the Principal Amount prepaid |
| Loan Year 8 (Extended Term Year 1) | 5% of the Principal Amount prepaid |
| Loan Year 9 (Extended Term Year 2) | 4% of the Principal Amount prepaid |
| Loan Year 10 (Extended Term Year 3) | 3% of the Principal Amount prepaid |
| Loan Year 11 (Extended Term Year 4) | 2% of the Principal Amount prepaid |
| Loan Year 12 (Extended Term Year 5) | 1% of the Principal Amount prepaid |

| IV. Additional Defined Terms | |
|---|---|
| Business Day | Any day other than a Saturday, Sunday, or a public holiday or the equivalent for banks generally under the applicable federal law and if no applicable federal law exists, then the applicable state law. Notwithstanding the foregoing, whenever any payment (including but not limited to Monthly Payments) or other obligation required under this Note, the Mortgage or any of the other Loan Documents shall be due on a day that is not a Business Day, such payment may be made or shall be debited on the Business Day Adjustment Date. |
| Business Day Adjustment Date | the next succeeding Business Day |

6990874.1

[Signature Page to the Schedule to Restated Note]

**FC 2501 LLC**

By: _____
JASON WISOTSKY
Manager

**MIZ3 LLC**

By: _____
JASON WISOTSKY
~~Manager~~ Authorized Signatory

**FC 1191 LLC**

By: _____
JASON WISOTSKY
Manager

## ALLONGE TO PROMISSORY NOTE

This **ALLONGE TO PROMISSORY NOTE** (this "**Allonge**") is attached to and made a part of that certain promissory note dated as of November 20, 2019 in the maximum principal amount of up to EIGHT MILLION TWO HUNDRED THOUSAND AND 00/100 ($8,200,000.00) DOLLARS (the "**Note**"), made by FC 2501 LLC, MIZ3 LLC, AND FC 1191 LLC (collectively, the "**Borrower**"), as borrower, to CAPITAL ONE, NATIONAL ASSOCIATION as payee, having an address at 1600 Capital One Drive, McLean, VA 22102 (together with its permitted successors and assigns, "**Assignor**").

Assignor hereby endorses and assigns all of its, right, title and interest in, to and under the Note to **PT ATL SPV GRANTOR TRUST**, having an address at c/o Delaware Trust Company, Attn: Trust Administration, 251 Little Falls Drive, Wilmington, Delaware 19808 in its capacity as lender (together with its successors and assigns, "**Assignee**"). This Allonge is made without recourse to Assignor and without any representation, warranty or covenant whatsoever, express or implied, by Assignor.

Dated: __SEP 2 8 2021_____.

[SIGNATURE ON NEXT PAGE]

[1000374] - FC 2501 LLC

[Signature Page to Allonge to Promissory Note]

CAPITAL ONE, NATIONAL ASSOCIATION

By: _____
DESIREE HARLOW
Authorized Signatory