# EXHIBIT D

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

</td><td>



2019112700470003002E4DD7

</td></tr>
</table>

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 44 |
|---|---|---|
| **Document ID:** 2019112700470003 | Document Date: 11-20-2019 | Preparation Date: 12-02-2019 |
| Document Type:  AGREEMENT | | |
| Document Page Count: 42 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| LANDMARK ABSTRACT AGENCY LLC<br>207 ROCKAWAY TURNPIKE<br>LAWRENCE, NY 11559<br>212-805-8120<br>LAA3652 | CERTILMAN BALIN ADLER & HYMAN LLP<br>DAVID E HEROLD<br>90 MERRICK AVENUE 9TH FLOOR<br>EAST MEADOW, NY 11554 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5212 | 24  Entire Lot | 54 | 2501 NEWKIRK AVENUE |
| **Property Type:** | APARTMENT BUILDING | | | |

### CROSS REFERENCE DATA

BROOKLYN    **Year:** 1984    **Reel:** 1545    **Page:** 812
  ☒ Additional  Cross References on Continuation  Page

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| FC 2501 LLC<br>62 RUTLEDGE STREET, SUITE 109<br>BROOKLYN, NY 11249 | CAPITAL ONE, NATIONAL ASSOCIATION<br>1307 WALT WHITMAN ROAD<br>MELVILLE, NY 11747 |
| ☒ Additional  Parties Listed on Continuation  Page | |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 8,200,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed    12-02-2019 10:12 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 247.00 | **2019000391430** | | |
| Affidavit Fee: | $ | 8.00 | | | |

*Annette M Hill*

***City Register Official Signature***

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2019112700470003002C4F57

| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | | PAGE 2 OF 44 |
|---|---|---|
| **Document ID: 2019112700470003** | Document Date: 11-20-2019 | Preparation Date: 12-02-2019 |
| Document Type: AGREEMENT | | |

**CROSS REFERENCE DATA**

BROOKLYN  **Year:** 1988  **Reel:** 2222  **Page:** 446
BROOKLYN  **Year:** 1988  **Reel:** 2222  **Page:** 450
BROOKLYN  **Year:** 1988  **Reel:** 2222  **Page:** 460
BROOKLYN  **Year:** 1988  **Reel:** 2222  **Page:** 448
BROOKLYN  **Year:** 1998  **Reel:** 4226  **Page:** 2129
BROOKLYN  **Year:** 1998  **Reel:** 4226  **Page:** 2142
BROOKLYN  **Year:** 1998  **Reel:** 4226  **Page:** 2150
BROOKLYN  **Year:** 1998  **Reel:** 4226  **Page:** 2135
**CRFN:** 2005000262816
**CRFN:** 2005000262817
**CRFN:** 2005000262818
**CRFN:** 2012000045144
**CRFN:** 2012000045147
**CRFN:** 2012000045148
**CRFN:** 2012000124687
**CRFN:** 2012000124688
**CRFN:** 2013000464606
**CRFN:** 2013000464607
**CRFN:** 2013000464608
**CRFN:** 2015000086729
**CRFN:** 2015000086730
**CRFN:** 2018000063134
**CRFN:** 2018000063135
**CRFN:** 2018000063136
**Document ID:** 2019112700470001
**Document ID:** 2019112700470002

**PARTIES**

**PARTY 1:**
MIZ3 LLC
62 RUTLEDGE STREET, SUITE 109
BROOKLYN, NY 11249

**PARTY 1:**
FC 1191 LLC
62 RUTLEDGE STREET, SUITE 109
BROOKLYN, NY 11249

**CONSOLIDATION, EXTENSION, MODIFICATION AND SECURITY AGREEMENT**

Date: November 20, 2019

-by and between -

**FC 2501 LLC, MIZ3 LLC, AND FC 1191 LLC**

- and -

**CAPITAL ONE, NATIONAL ASSOCIATION**

TAX MAP DESIGNATION OF THE PREMISES ENCUMBERED HEREBY:

| | |
|---|---|
| Section: | 16 |
| Block: | 5212 |
| Lot: | 24 |
| County: | Kings |

**Premises Address:**    **2501-2511 Newkirk Avenue a/k/a 417 East 25th Street, Brooklyn, New York**

**Record and Return to:**

Certilman Balin Adler & Hyman, LLP
Attn: David E. Herold, Esq.
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554

6990874.1

## INDEX

| | |
|---|---|
| SECTION 1.01. | Representations and Warranties of Mortgagor |
| SECTION 1.01A. | Consolidation of the Mortgages |
| SECTION 1.02. | (A) Debt; |
| | (B) Payment of the Debt |
| SECTION 1.03. | Warranty of Title |
| SECTION 1.04. | (A) Payment of Taxes |
| | (B) Tax and Insurance Reserve Escrow Deposit |
| | (C) Disbursement of Tax and Insurance Reserve; Reimbursement for Deficiency |
| SECTION 1.05. | (A) Insurance Coverage |
| | (B) Insurance Policies |
| | (C) Casualty |
| SECTION 1.06. | Reporting Requirements; Financial Statements |
| SECTION 1.07. | (A) Due on Sale; Restrictions on Further Encumbrances |
| | (B) Restrictions on Sales and Transfers of Interests in Mortgagor |
| | (C) Replacement Guarantor |
| | (D) Assumption of the Note and this Agreement |
| SECTION 1.08. | Leases and Leasing of the Mortgaged Property |
| SECTION 1.09. | Statement Pursuant to §13 of the New York Lien Law |
| SECTION 1.10. | (A) Waste |
| | (B) Violations |
| | (C) Right of Entry; Inspection |
| SECTION 1.11. | Condemnation |
| SECTION 1.12. | Further Assurances; Compliance |
| SECTION 1.13. | (A) Evidence and Perfection of Lien |
| | (B) Payment of Fees |
| SECTION 1.14. | Protective Advances |
| SECTION 1.15. | Mechanic's Liens |
| SECTION 1.16. | Obligation to Defend |
| SECTION 1.17. | Changes in Laws Regarding Taxation |
| SECTION 1.18. | Compliance with Laws |
| SECTION 1.19. | Environmental Compliance and Indemnity |
| SECTION 1.20. | Account Requirements |
| SECTION 1.21. | Indemnification |
| SECTION 1.22. | Single Purpose Entity |

i

**SECTION 2.01.**     **Events of Default**

          **(I) Interest Rate After Event of Default**

          **(II) Ability to Accelerate Due Date of Debt**

          **(III) Right of Entry; Receiver**

          **(IV) Foreclosure; Specific Performance**

**SECTION 2.02.**     **Foreclosure Sale; Adjournment; Execution of Instruments; Application of Proceeds**

**SECTION 2.03.**     **Payments upon Default; Enforcement; Recovery of Judgment**

**SECTION 2.04.**     **Appointment of Receiver**

**SECTION 2.05.**     **Retention of Possession and Control**

**SECTION 2.06.**     **Cumulative Remedies**

**SECTION 2.07.**     **Mortgagor's Waiver of Stay**

**SECTION 2.08.**     **Payment for Occupancy; Surrender of Possession**

**SECTION 2.09.**     **No Liability for Failure to Act or Loss to Mortgagor**

**SECTION 2.10.**     **Recourse Obligations**


**SECTION 3.01.**     **Severability**

**SECTION 3.02.**     **Notices**

**SECTION 3.03.**     **Covenants Run with Land; Successors and Assigns**

**SECTION 3.04.**     **Usury**

**SECTION 3.05.**     **Counterparts**

**SECTION 3.06.**     **Statement Pursuant to §254 of New York Real Property Law**

**SECTION 3.07.**     **Mortgagee's Right to Sell, Participate**

**SECTION 3.08.**     **Modification in Writing**

**SECTION 3.09.**     **Security Agreement**

**SECTION 3.10.**     **Time of the Essence**

**SECTION 3.11.**     **Severance of Lien**

**SECTION 3.12.**     **Statement Pursuant to §253-1a of New York State Tax Law**

**SECTION 3.13.**     **Waiver of Jury Trial**

**SECTION 3.14.**     **Other Judicial Waivers**

**SECTION 3.15.**     **Governing Law; Venue**

**SECTION 3.16.**     **Nature of Relationship Limited**

**SECTION 3.17.**     **Right of Set Off**

**SECTION 3.18.**     **Future Assignment of this Agreement**

**SECTION 3.19.**     **Interpretation of Provisions**

**SECTION 3.20.**     **Paragraph Headings**

ii

6990874.1

**SECTION 3.21.**        **Tenants in Common**

**SECTION 3.22.**        **Additional Suretyship Waivers**

iii

6990874.1

This CONSOLIDATION, EXTENSION, MODIFICATION AND SECURITY AGREEMENT (the **"Agreement"**) is made as of the 20th day of November, 2019, by **FC 2501 LLC, MIZ3 LLC, AND FC 1191 LLC,** as tenants in common, each a New York limited liability company and each having an office at 62 Rutledge Street, Suite 109, Brooklyn, New York 11249 (collectively, the **"Mortgagor"**), and **CAPITAL ONE, NATIONAL ASSOCIATION**, having an address at 1307 Walt Whitman Road, Melville, New York 11747 (the **"Mortgagee"**).

## W I T N E S S E T H :

**WHEREAS**, Mortgagor is the fee simple owner of the parcel of real property located at and known as 2501-2511 Newkirk Avenue a/k/a 417 East 25th Street, Brooklyn, New York (the **"Land"**) and more particularly described by metes and bounds in Schedule A attached hereto; and

**WHEREAS**, Mortgagee is the holder of those certain mortgages set forth on Schedule B annexed hereto and made a part hereof (the **"Existing Mortgages"**) and the notes secured thereby (the **"Existing Notes"**), which Existing Mortgages encumber the Mortgaged Property (as hereinafter defined); and

**WHEREAS**, Mortgagor has this date borrowed the additional sum of **ONE MILLION ONE HUNDRED NINETY-NINE THOUSAND THREE HUNDRED TWELVE AND 25/100 ($1,199,312.25) DOLLARS** from Mortgagee, which sum is evidenced by a promissory note to Mortgagee in the amount thereof (the **"Gap Note"**) and secured by a first mortgage lien encumbering the Mortgaged Property created by that certain Gap Mortgage in the amount thereof (the **"Gap Mortgage"**); and

**WHEREAS**, Mortgagor and Mortgagee hereby agree to consolidate, coordinate and spread the liens of the Existing Mortgages and the Gap Mortgage and to modify and extend the terms thereof so that hereafter they shall constitute in law one mortgage which shall be a single first lien encumbering the Mortgaged Property in the principal amount of **EIGHT MILLION TWO HUNDRED THOUSAND AND 00/100 ($8,200,000.00) DOLLARS** (the **"Principal Amount"**) and shall contain solely the terms, conditions and other provisions set forth herein; and

**WHEREAS**, as evidence of the Principal Amount, Mortgagor has executed a restated note in the amount thereof of even date herewith (the **"Note"**), which Note combines, consolidates, modifies and extends the Existing Notes and the Gap Note so that the Debt (as hereinafter defined) shall be repaid solely by the terms and conditions of the Note.

**NOW, THEREFORE,** in consideration of the premises and other covenants herein contained, Mortgagor hereby gives, grants, bargains, sells, warrants, alienates, demises, releases, conveys, assigns, transfers, mortgages, hypothecates, deposits, pledges, sets over and confers unto Mortgagee, and grants Mortgagee a security interest in all of its estate, right, title and interest in, to and under any and all of the following property described in paragraphs (i) through (xii) below (collectively, the **"Mortgaged Property"**) whether now owned or held or hereafter acquired:

(i)      the Land plus any air rights, easements, privileges, royalties, rights and appurtenances hereunto belonging or in any way appertaining, and all of the estate, right, title, interest, claim or demand whatsoever of Mortgagor therein and in the streets and ways adjacent thereto, either at law or in equity, in possession or expectancy, now or hereafter acquired and including the land surface and the entire subsurface of soil, sand, gravel, stone and rock, all surface water and subsurface water, whether flowing or stagnant, and the ambient air (collectively, the **"Premises"**); and

(ii)      all improvements, structures or buildings and replacements thereof now or hereafter erected on the Premises including equipment and fixtures attached thereto and owned by Mortgagor (collectively, the **"Improvements"**); and

(iii)      all chattels at the Premises owned by Mortgagor including all fixtures, fittings, appliances, apparatus, equipment, computers, machinery and articles of personal property and replacements thereof, other than those owned or leased by Lessees (as hereinafter defined), now or at any time hereafter affixed to, attached to, placed upon, or used in any

1

6990874.1

way in connection with the complete and use, enjoyment, occupancy or operation of the Improvements (collectively, the "**Chattels**"); and

(iv)    all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards and any unearned premiums accrued, accruing or to accrue under any and all insurance policies now or hereafter obtained by Mortgagor, and all rights of Mortgagor to refunds of real estate taxes and assessments; and

(v)    all leases, subleases, lettings, licenses, occupancy agreements, contracts or agreements of any kind pertaining to the Premises and the Improvements or any part thereof now or hereafter entered into (each a "**Lease**" and collectively, the "**Leases**") and all right, title and interest of Mortgagor thereunder, including, without limitation: (a) cash, letters of credit or other securities deposited thereunder to secure performance by the lessees, sub-lessees, licensees, occupants, users or contractors (each a "**Lessee**" and collectively, the "**Lessees**") thereof of their obligations thereunder, whether such cash, letters of credit or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms; (b) all guarantees of obligations of any Lessee; and (c) the right to receive and collect all income from any portion of the Mortgaged Property, including, but not limited to, all rents, issues, letters of credit and profits from the Leases (collectively, the "**Rents**"), all in accordance with the terms hereof and the terms of that certain Assignment of Leases and Rents of even date herewith from Mortgagor, as assignor, to Mortgagee, as assignee (the "**Assignment of Leases and Rents**"); and

(vi)    all awards heretofore made and hereafter to be made by any municipal, state or federal authorities to Mortgagor, including any awards for any changes of grade of streets affecting the Premises as the result of the exercise of the power of eminent domain (the "**Awards**"); and

(vii)    all judgments or settlement proceeds against any municipal, state or federal authorities in favor of Mortgagor, including any judgment or settlement proceeds for any government violations of the Fair Housing Amendment Act of 1988, 42 U.S.C.A.§§3601 et. al.; or the American With Disabilities Act, 42 U.S.C.A. §§ 12101 et al. involving Mortgagor and/or the Mortgaged Property; and

(viii)    all the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, accounts receivable, contract rights, general intangibles, trade names, books, records and computer software related to operation of the Premises and the Improvements, actions and rights in action, relating thereto and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing; and

(ix)    all plans, drawings, specifications, site plans, subdivision maps, sketches, contracts and agreements, however characterized from time to time prepared for use in connection with the development, redevelopment or renovation of the Premises and Improvements; and

(x)    all contracts, agreements and understandings now or hereafter entered into, relating to or involving the performance of any work, rendering of any services, and supply of any materials or the conduct of operations in and the management of the Mortgaged Property including, without limitation, construction contracts, brokerage agreements, architect agreements, management agreements, options and other agreements, however characterized, affecting the Premises and/or the Improvements or the public improvements required to be installed under the terms of governmental approvals relating to the Premises (collectively, the "**Contracts**"); and

(xi)    any and all permits, certificates, approvals and authorizations, however characterized, issued or in any way furnished whether necessary or not, for the operation and use of the Premises and/or the Improvements and/or any other portion thereof including, without limitation, certificates of occupancy, building permits, environmental certificates, certificates of operation, warranties and guarantees; and

(xii)    all bank accounts maintained by Mortgagor in connection with the Mortgaged Property (whether maintained with Mortgagee or any other financial or depository institution) and all the monies contained therein, including, but not limited to, the Auto-debit Account (as defined in the Note), Mortgagor's operating account (the "**Operating**

2

Account"), all tenant security account(s) for the Mortgaged Property, subject to the rights of tenants therein (the "**Tenant Security Account**"), any interest or debt service reserve accounts and the Tax and Insurance Reserves (as hereinafter defined).

**TO HAVE AND TO HOLD** unto Mortgagee, its successors and assigns forever.

### ARTICLE I

**COVENANTS, WARRANTIES AND REPRESENTATIONS OF MORTGAGOR**

**SECTION 1.01.** **Representations and Warranties of Mortgagor.**

Mortgagor represents and warrants, that:

(a)        the information provided in the application for the **Loan** (as defined in the Note), including but not limited to contracts of sale, Contracts, Leases, schedule of Rents, credit statements, financial statements and in any other document presented to Mortgagee was true, accurate and complete in all material respects when made and remains true, accurate and complete on the date hereof in all material respects and to the best of Mortgagor's knowledge does not omit any material facts;

(b)        there has been no Material Adverse Change in the financial condition of Mortgagor or any person or entity that has executed as a guarantor that certain Guaranty of Recourse Obligations of Borrower of even date herewith (hereinafter collectively referred to as the "**Guarantor**" even if there are more than one and whether such guaranty was executed and delivered contemporaneously herewith or subsequent hereto) or in any other item therein considered by Mortgagee for the purposes of making the Loan.  As used herein, "**Material Adverse Change**" means any event or condition that has a material adverse effect upon the business or financial position or results of operation of Mortgagor, that result in the inability of Mortgagor to repay the principal and interest of the Note as it becomes due and/or to satisfy Mortgagor's obligations under any of the Loan Documents (as defined in the Note);

(c)        no insolvency or bankruptcy proceedings are pending against (i) Mortgagor, (ii) any Guarantor, (iii) any shareholders of Mortgagor if Mortgagor is a corporation, (iv) any of the partners of Mortgagor if Mortgagor is a general partnership or limited partnership, or (v) any members of Mortgagor if Mortgagor is a limited liability company;

(d)        Mortgagor is the record and beneficial owner and holder of marketable title to an indefeasible fee simple estate in the Premises and Improvements, subject to no lien, charge or encumbrance other than any permitted exceptions appearing in the policy of title insurance insuring the lien of this Agreement on the date hereof;

(e)        Mortgagor is the owner of the Chattels free and clear of all liens;

(f)        there has been no material adverse change in the condition of the Mortgaged Property since the date of application for the Loan;

(g)        Mortgagor is duly organized, validly existing and is in good standing under the laws of the State of New York and has full power and lawful authority to carry on its business as currently conducted, to borrow the Debt and to encumber the Mortgaged Property to the full extent contemplated under this Agreement;

(h)        the execution and delivery of this Agreement has been duly authorized by all necessary action on the part of Mortgagor and does not require the consent of any other party;

(i)        the provisions of this Agreement will not result in the default by Mortgagor of any of the terms, conditions or provisions of any law, regulation, order, writ, injunction or decree of any court or governmental authority having jurisdiction over the Mortgaged Property or any agreement or instrument to which Mortgagor is a party;

(j)    Mortgagor and the Mortgaged Property are in compliance with all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers which may, as of the date of this Agreement or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways in so far as Mortgagor is required to comply therewith;

(k)    the Mortgaged Property has all necessary licenses, authorities, permits and approvals, including certificates of occupancy, certificates of compliance or certificates of use to operate the Improvements, including, but not limited to, electricity, water drainage, and sewer in compliance with all applicable laws and regulations;

(l)    there are no actions, suits or proceedings (including, but not limited to, government or regulatory investigations or proceedings) pending or threatened against the Mortgaged Property, the result of which might have a materially adverse effect upon the Mortgaged Property;

(m)    there are no actions, suits or proceedings (including, but not limited to, government or regulatory investigations or proceedings) pending or threatened against: (1) Mortgagor, or (2) any shareholders of Mortgagor, if Mortgagor is a corporation, or (3) any of the partners of Mortgagor, if Mortgagor is a general partnership or limited partnership, or (4) any members of Mortgagor, if Mortgagor is a limited liability company, the result of which might have a materially adverse effect upon the Mortgaged Property or Mortgagor's ability to perform under the Note, this Agreement or any other Loan Documents;

(n)    there are no actions, suits or proceedings (including, but not limited to, government or regulatory investigations or proceedings) pending or threatened against: (1) Guarantor, or (2) any shareholders of Guarantor, if Guarantor is a corporation, or (3) any of the partners of Guarantor, if Guarantor is a general partnership or limited partnership, or (4) any members of Guarantor, if Guarantor is a limited liability company, the result of which might have a materially adverse effect upon the Mortgaged Property or Guarantor's ability to perform its obligations under any guaranty;

(o)    Mortgagor is the holder of the lessor's interest in the Leases and Rents, which Leases and Rents have not been transferred, pledged or encumbered in any manner;

(p)    the Leases are subordinate to the lien of this Agreement;

(q)    Mortgagor is not in default of any of its material obligations under the Leases;

(r)    Mortgagor has not engaged any broker(s) in connection with the Loan unless such broker(s) has (have) been paid in full pursuant to the terms of Mortgagor's contract or brokerage agreement with such broker(s); and

(s)    Mortgagor is not currently indebted to any of its shareholders or officers and any future loans made by its shareholders, officers or members to Mortgagor shall be subordinate to Mortgagor's obligations to Mortgagee.

In the event Mortgagor is purchasing the Mortgaged Property simultaneously herewith, then as to Sections 1.01(f), (j), (k), and (l), Mortgagor is making such representations (as same relate to the Mortgaged Property) to the best of its knowledge.

**SECTION 1.01A.  Consolidation of the Mortgages.**    Mortgagor and Mortgagee hereby agree to consolidate, coordinate and spread the liens of the Existing Mortgages and the Gap Mortgage and to modify and extend the terms thereof so that hereafter they shall constitute in law one mortgage which shall be a single first lien encumbering the Mortgaged Property in the Principal Amount of the Debt, and shall contain solely the terms, conditions and other provisions set forth herein.

**SECTION 1.02.   (A)   The Debt.**   This Agreement and the grants, assignments and transfers made pursuant to the terms hereof are given for the purpose of securing the payment of the following in such order of priority as Mortgagee may determine in its sole discretion (the **"Debt"**):

  (1)   the Principal Amount evidenced by the Note in lawful money of the United States of America;

  (2)   interest, interest at the Default Rate (as hereinafter defined), late charges and other sums, as provided in the Note, this Agreement, or any other documents executed in connection herewith;

  (3)   any prepayment charges due under the Note;

  (4)   all other monies agreed or provided to be paid by Mortgagor pursuant to the Note, this Agreement, or any other document executed in connection herewith, including, but not limited to, the Tax and Insurance Reserves;

  (5)   all Protective Advances (as hereinafter defined); and

  (6)   all sums advanced and costs and expenses incurred by Mortgagee in connection with the Debt or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Mortgagor or Mortgagee.

**(B)   Payment of the Debt.**   Mortgagor will punctually pay the Debt and all other sums due in connection herewith and therewith in accordance with the terms of the Note (as same may be extended, modified and/or restated) and this Agreement.

**SECTION 1.03.   Warranty of Title.**   Mortgagor will preserve the state and condition of the fee title to the Mortgaged Property and will forever warrant and defend the same to Mortgagee, and Mortgagor will forever warrant and defend the validity and priority of the lien of this Agreement against the claims of all persons and parties whomsoever.

**SECTION 1.04.   (A)   Payment of Taxes.**   Mortgagor will timely pay and discharge all taxes of every kind and nature (including but not limited to real estate taxes, water and sewer taxes, Business Improvement District (BID) taxes, and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and charges, and all other public charges whether of a like or different nature, imposed upon or assessed against it or the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof (collectively, the **"Taxes"**).   Upon Mortgagee's request, Mortgagor will, within thirty (30) days after the due date of any installment of any imposition, deliver to Mortgagee, receipts evidencing the payment of all Taxes.

**(B)   Tax and Insurance Reserve Escrow Deposit.**Mortgagor shall deposit with Mortgagee such amounts as Mortgagee shall determine to be necessary to establish a reserve only for payment of real estate taxes and the insurance premiums payable under Section 1.05(A) below. The deposits shall collectively be referred to as the **"Tax and Insurance Reserves."** In connection therewith, Mortgagee shall require the deposit by Mortgagor, at the time of each payment of any installment of interest and/or principal under the Note (and/or periodically during the term of this Agreement), of an additional amount sufficient to discharge such obligations thirty (30) days before same become due. The determination of the amounts payable and of the amount to be deposited with Mortgagee, so that the aggregate of such deposits shall be sufficient for this purpose, shall be made by Mortgagee in its sole discretion and may include additional amounts to be held and future adjustments to be made according to projected tax rate increases and inflation factors. On the date hereof, Mortgagee has waived the requirement for an insurance escrow and shall permit Mortgagor to pay its own casualty and liability insurance during the term of this Agreement.   Notwithstanding Mortgagee's waiver of the insurance escrow requirement as set forth above, it hereby reserves the right to reinstitute same at any time during the term of this Agreement if (1) it reasonably believes it is prudent to do so in order to protect its interests or (2) after the occurrence of

5

any Event of Default (as hereinafter defined). Notwithstanding the foregoing, flood insurance, if required, must be escrowed with Mortgagee.

        (C)    **Disbursement of Tax and Insurance Reserve; Reimbursement of Deficiency.**  The Tax and Insurance Reserves shall be held by Mortgagee without interest and may be co-mingled with Mortgagee's general funds and shall be disbursed by Mortgagee for the payment of the obligations of Mortgagor in subparagraph 1.04(B) above (the "**Obligations**") on or before their respective due dates. If thirty (30) days prior to the due date of any of the Obligations the amounts then on deposit with Mortgagee therefor shall be insufficient for the payment thereof, within ten (10) days after demand, Mortgagor shall deposit the amount of any deficiency in the Tax and Insurance Reserves with Mortgagee. Notwithstanding the provisions of this subparagraph 1.04(C), after an Event of Default hereunder Mortgagee may elect to apply the Tax and Insurance Reserves to any amounts which may be due and owing under the Note and/or this Agreement.

      **SECTION 1.05**.   **Insurance Coverage; Insurance Policies and Casualty**

        (A)  **Insurance Coverage**. Mortgagor, at its sole cost, for the mutual benefit of Mortgagor and Mortgagee, shall obtain and maintain during the term of this Agreement the following policies of insurance:

           (1)    Property insurance insuring against loss or damage customarily included under so called "all risk" or "special form" policies including fire, lightning, vandalism, and malicious mischief, boiler and machinery and, if required by Mortgagee, flood and/or earthquake coverage and such other insurable hazards as, under good insurance practices, from time to time are insured against for other property and buildings similar to the Mortgaged Property in nature, use, location, height, and type of construction (but in any such case without exclusion for damage caused by acts of terrorism). Such insurance policy shall also insure for ordinance of law coverage, costs of demolition, costs to rebuild any undamaged portion that needs to be destroyed, then rebuilt to law and code, and increased cost of construction in amounts satisfactory to Mortgagee. Each such insurance policy shall (a) be in an amount equal to the lesser of (i) 100% of the then replacement cost of the Improvements without deduction for physical depreciation and (ii) the aggregate unpaid Principal Amount, (b) be paid annually in advance, and (c) be on a replacement cost basis and contain either no coinsurance or, if coinsurance, an agreed amount endorsement, and shall cover, without limitation, all tenant improvements and betterments that Mortgagor is required to insure on a replacement cost basis. Mortgagee shall be named "Mortgagee" and "Loss Payee" on a standard mortgagee endorsement.

           (2)    Rental loss and/or business interruption insurance (a) with Mortgagee being named as "Mortgagee" and "Loss Payee", (b) in an amount equal to one hundred percent (100%) of the projected gross Rents from the Mortgaged Property during the event that caused the loss of income; and (c) which amount of such insurance shall be increased from time to time during the term of this Agreement as and when the estimated or actual Rents increase.

           (3)    Flood insurance if any part of the Mortgaged Property is located in an area now or hereafter designated by the Federal Emergency Management Agency as a Zone "A" & "V" Special Hazard Area, or such other Special Hazard Area, in amounts required by Mortgagee in its reasonable discretion for buildings of similar size, nature and use.

           (4)    Liability insurance, including coverage for personal injury, bodily injury, death, accident and property damage, such insurance providing in combination no less than containing minimum limits per occurrence of $1,000,000.00 and $2,000,000.00 in the aggregate for any policy year. Mortgagee shall be named as an additional insured on such policy.

           (5)    Such other insurance (including, but not limited to, environmental liability insurance, earthquake insurance, sinkhole insurance, mine subsidence insurance and windstorm insurance) as may from time to time be reasonably required by Mortgagee in order to protect its interests, provided that Mortgagee has a reasonable basis to request same.

        (B)   **Insurance Policies**. All policies of insurance (the "**Policies**") required pursuant to this <u>Section 1.05</u> shall (1) be issued by companies approved by Mortgagee and licensed to do business in the State of New York, with a claims paying ability rating of A or better by S&P (and the equivalent by any other Rating Agency), or a rating of AX or better in

6

the current Best's Insurance Reports; (2) name Mortgagee and its successors and/or assigns as their interest may appear as the "Mortgagee" (in the case of property insurance), "Loss Payee" (in the case of property insurance and business interruption/loss of rents coverage) and as an "Additional Insured" (in the case of liability insurance); (3) contain (in the case of property insurance) a Non-Contributory Standard Mortgagee Clause and a Lender's Loss Payable Endorsement, or their equivalents, naming Mortgagee as the person to which all payments made by such insurance company shall be paid; (4) contain a waiver of subrogation against Mortgagee; (5) be assigned and the originals thereof delivered to Mortgagee (or certificates of insurance in lieu thereof, provided the form and content is acceptable to Mortgagee); and (6) contain such provisions as Mortgagee deems reasonably necessary or desirable to protect its interest and be reasonably satisfactory in form and substance to Mortgagee as to amounts, form, risk coverage, deductibles, loss payees and insureds. Mortgagor shall pay, or cause to be paid, the premiums for such Policies (the "**Insurance Premiums**") as the same become due and payable and furnish to Mortgagee evidence of the renewal of each of the Policies together with (unless such Insurance Premiums have been paid by Mortgagee pursuant to Section 1.05) receipts for or other evidence of the payment of the Insurance Premiums reasonably satisfactory to Mortgagee. If Mortgagor does not furnish such evidence and receipts at least thirty (30) days prior to the expiration of any expiring Policy or at any such time as Mortgagee receives notice that the insurance coverage required hereby is not in effect, then Mortgagee may, but shall not be obligated to, procure such insurance and pay the Insurance Premiums therefor (which payment shall be considered a Protective Advance), and Mortgagor shall reimburse Mortgagee for the cost of such Insurance Premiums promptly upon written demand, with interest accruing at the Default Rate from the date of demand. Mortgagor shall deliver to Mortgagee a certified copy of each Policy (or certificates of insurance in lieu thereof, provided the form and content is acceptable to Mortgagee) within thirty (30) days after its effective date. Within thirty (30) days after request by Mortgagee, Mortgagor shall obtain such increases in the amounts of coverage required hereunder as may be reasonably requested by Mortgagee, taking into consideration changes in the value of money over time, changes in liability laws, changes in prudent customs and practices, and the like.

(C)    **Casualty**.

(1)    **Notice; Restoration**. If the Mortgaged Property is damaged or destroyed, in whole or in part, by fire or other casualty (a "**Casualty**"), Mortgagor shall give notice thereof to Mortgagee within two (2) Business Days (as defined in the Note) of said Casualty. Following the occurrence of a Casualty, Mortgagor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the Mortgaged Property in accordance with all legal requirements to be of at least equal value and of substantially the same character as prior to such damage or destruction.

(2)    **Settlement of Proceeds**. If a Casualty covered by any of the Policies (an "**Insured Casualty**") occurs where the loss is less than ten percent (10%) of the unpaid balance of the Principal Amount on the date of the loss (the "**Loss Threshold**"), provided no Event of Default has occurred and is continuing, Mortgagor may settle and adjust any such claim without the prior consent of Mortgagee; provided such adjustment is carried out in a competent and timely manner, and Mortgagor is hereby authorized to collect the insurance proceeds (the "**Proceeds**") and disburse for restoration of the Mortgaged Property. In the event of an Insured Casualty where the loss equals or exceeds the Loss Threshold (a "**Significant Casualty**"), Mortgagee may, in its sole discretion, settle and adjust any claim without the consent of Mortgagor and agree with the insurer(s) on the amount to be paid on the loss, and the Proceeds shall be due and payable solely to Mortgagee and held by Mortgagee and disbursed in accordance with the terms of Section 1.05(C)(3) below. If Mortgagor or any party other than Mortgagee is a payee on any check representing Proceeds with respect to a Significant Casualty, Mortgagor shall immediately endorse, and cause all such third parties to endorse, such check payable to the order of Mortgagee. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to endorse such check payable to the order of Mortgagee. The expenses incurred by Mortgagee in the settlement, adjustment and collection of the Proceeds shall become part of the Debt and shall be reimbursed by Mortgagor to Mortgagee upon demand. Notwithstanding anything to the contrary contained herein, if in connection with a Casualty any insurance carrier makes a payment under a property insurance Policy that Mortgagor proposes be treated as business or rental interruption insurance, then, notwithstanding any designation (or lack of designation) by the insurance carrier as to the purpose of such payment, as between Mortgagee and Mortgagor, such payment shall not be treated as business or rental interruption insurance proceeds unless Mortgagor has demonstrated to Mortgagee's satisfaction that the remaining net Proceeds that will be received from the property insurance carriers are sufficient to pay

7

one hundred percent (100%) of the cost of fully restoring the Improvements or, if such net Proceeds are to be applied to repay the Debt in accordance with the terms hereof, that such remaining net Proceeds will be sufficient to pay the Debt in full.

(3)     Notwithstanding anything to the contrary contained herein, in the event of any Significant Casualty, Mortgagee will make eighty percent (80%) of the Proceeds available for restoration, provided that: (a) the Proceeds are sufficient, in the reasonable opinion of Mortgagee, to complete the restoration (unless Mortgagor deposits with Mortgagee the amount of such deficiency); (b) there is no continuing Event of Default hereunder; and (c) in Mortgagee's reasonable opinion the restoration can be completed within twelve (12) months from the occurrence of the damage.  The remaining twenty percent (20%) of the Proceeds shall be released after completion of the restoration and the rental of the restored portion of the Mortgaged Property at a rental reasonably acceptable to Mortgagee.  If the restoration is undertaken, Mortgagor shall submit plans and specifications and a budget, subject to Mortgagee's reasonable approval.  Disbursement of the Proceeds will be made periodically pursuant thereto.  The expenses incurred by Mortgagor (including, without limitation, hard and soft costs) will be paid by Mortgagor to the extent that the Proceeds available are insufficient to pay such expenses. Mortgagee shall not be required at any time to disburse any Proceeds if the undisbursed balance thereof is, in its reasonable opinion, insufficient to timely complete the restoration free of liens in accordance with the plans and specifications.

It is intended that no trust shall be created by the receipt of Mortgagee of any Proceeds, nor shall there be any obligation on Mortgagee to pay any interest thereon.

(4)     Notwithstanding the foregoing, in the event Mortgagee is not required to make insurance proceeds available for restoration pursuant to Section 1.05(C)(2) or (3) above, or in the event that Mortgagee reasonably determines that the Mortgaged Property is not able to be restored, then any sums paid to Mortgagee by any insurer may be retained and applied by Mortgagee: (i) toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper or, (ii) at the discretion of Mortgagee, either in whole or in part, to Mortgagor for such purposes as Mortgagee shall designate.  If Mortgagee shall receive and retain such insurance proceeds as hereinabove provided, the lien of the Agreement shall be reduced only by the amount retained and actually applied by Mortgagee to the reduction of the Debt after expenses of collection.   The provisions of Subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire shall not apply to this Agreement.  Mortgagee shall be entitled, in the event of other insurance and contribution between the insurers, to receive from the insurance proceeds such an amount as would have been payable under the policy or policies held for the benefit of Mortgagee in case there had been no contribution.

**SECTION 1.06.    Reporting Requirements; Financial Statements.**

(A)     Mortgagor will keep adequate records and books of accounts in accordance with generally accepted accounting principles or other sound accounting principles, consistently applied.  Mortgagor will permit Mortgagee, by its agents, accountants and/or attorneys, to visit and inspect the Mortgaged Property and examine its records and books of account and to discuss its affairs, finances and accounts with Mortgagor, at such reasonable times and upon reasonable notice as may be requested by Mortgagee.

(B)     Mortgagor and Guarantor will deliver to Mortgagee within one hundred twenty (120) days after the close of their respective fiscal years and/or within thirty (30) days of written request by Mortgagee, financial statements, a current rent roll for the Mortgaged Property and statements of profit, loss and cash flow setting forth in each case, in comparative form, figures for the preceding year.   Mortgagor and Guarantor will deliver to Mortgagee such other information with respect to Mortgagor and Guarantor as Mortgagee may reasonably request from time to time. All financial statements of Mortgagor and Guarantor shall be prepared in accordance with generally accepted accounting principles or other sound accounting principles, consistently applied. In the case of Mortgagor, such financial statements shall be accompanied by the certificate of a principal financial or accounting officer of Mortgagor stating (1) that they are true and correct, and (2) that to the best of Mortgagor's knowledge, there is no Event of Default or any event which after notice or lapse of time or both would constitute an Event of Default, which has occurred and is continuing. If any such event or Event of Default has occurred and is continuing, Mortgagor shall specify the nature and period of existence thereof and what action Mortgagor has taken or proposes to take with respect thereto, and, except as otherwise specified, stating that Mortgagor has fulfilled all of its obligations under this Agreement which are required to be fulfilled on or prior to the date

8

of such certificate. In addition to but not in lieu of any other remedies available to Mortgagee, upon Mortgagor's failure to supply to Mortgagee the records and/or other information required by this <u>Section 1.06(B)</u> within thirty (30) days after Mortgagee's written request for same, and until such records and/or information are furnished, interest payable hereunder shall be at the rate of twenty four percent (24%) per annum or the maximum rate allowed to be charged by law, whichever is lower.

(C)    Mortgagor and Guarantor will do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation, limited liability company, partnership, trust or other entity, as the case may be, under the laws of the state of its formation and will comply with all regulations, rules, statutes, orders and decrees of any governmental authority or court applicable to it or to the Mortgaged Property or any part thereof.

(D)    Mortgagor will execute and deliver to Mortgagee within five (5) Business Days upon request a written statement, duly acknowledged, of the amount due for principal or interest on this Agreement and whether any offsets, counterclaims or defenses exist against the Debt. The nature of each such offset, defense or counterclaim shall be set forth in full detail.

**SECTION 1.07.    (A)    <u>Due on Sale; Restrictions on Further Encumbrances.</u>**  Mortgagor shall not (1) permit the Mortgaged Property or any part thereof or any interest therein to be sold, transferred, conveyed, pledged, mortgaged, assigned or hypothecated to any other person or entity, or (2) convert the property to condominium or cooperative ownership without Mortgagee's prior written consent, or (3) sell, transfer, convey, pledge, mortgage, assign or hypothecate the Mortgaged Property or any part thereof or any interest therein, which shall include but not be limited to (a) where Mortgagor is a corporation, the transfer of any of the outstanding shares of the corporation or the dilution of the present stockholding or corporate control by issuance of new or treasury stock or by conversion of any non-voting stock or other securities to voting stock, or (b) where Mortgagor is a partnership, the transfer of any of the interests in Mortgagor, or the withdrawal, resignation or retirement of the general partner, or (c) where Mortgagor is a limited liability company, by a transfer of any of the membership interests in Mortgagor.  The acts referred to in (1), (2) and (3) above are hereinafter collectively referred to as "**Transfer**" when used as a verb or "**a Transfer**" when used as a noun.

(B)    <u>Restrictions on Sales and Transfers of Interests in Mortgagor.</u>  Notwithstanding anything to the contrary contained herein:

(1)    Upon prior written notice to Mortgagee, provided (a) the management of Mortgagor and of the Mortgaged Property do not change, and (b) the transfer will not result in a change of controlling interest in Mortgagor, the following transfers are permitted without Mortgagee's consent: (i) transfers of interest in and among the existing members/partners/shareholders of Mortgagor and (ii) transfers of interest to the existing members' immediate family members or to other entities owned solely by said immediate family members or to trusts for the benefit of same. Mortgagor shall promptly provide Mortgagee with all documentation evidencing such transfers. "Immediate family members" shall be defined as any of mother, father, son, daughter, brother, sister, grandchildren, son-in-law, daughter-in-law and spouse. Mortgagor agrees and acknowledges that, at Mortgagee's request, any proposed transferee hereunder shall be subject to Office of Foreign Assets Control and Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("**Patriot Act**") compliance review, and Mortgagor shall provide Mortgagee the necessary information to comply with such requirements at Mortgagee's request prior to any such transfer.

(2)    Transfers of interest of Mortgagor made by bequest, devise or operation of law shall not be deemed an Event of Default hereunder.

(C)    <u>Replacement Guarantor.</u>  In the event of the death of any Guarantor, Mortgagor shall, within sixty (60) days of the death of such Guarantor: (1) provide Mortgagee with one or more replacement guarantors (individually or collectively, a "**Replacement Guarantor**") who shall be acceptable to Mortgagee, and (2) provide Mortgagee with all financial and other information reasonably requested for the proposed Replacement Guarantor necessary for Mortgagee to make a determination that such proposed Replacement Guarantor is acceptable to Mortgagee, and (3) such Replacement Guarantor executes and delivers a replacement Guaranty to Mortgagee in a form materially equivalent to that signed by the deceased Guarantor and such Replacement Guarantor joins as a party to any other document executed by the deceased Guarantor.

6990874.1

(D)    **Assumption of the Note and this Agreement.**  In addition to the transfers permitted in Section 1.07(B) above, Mortgagee will consent to the assumption of the Note and this Agreement in connection with the sale of the Mortgaged Property to a bona fide purchaser provided:

(1)    Mortgagor is not in default of the terms of the Note and an Event of Default has not occurred and is not continuing under this Agreement;

(2)    the proposed transferee's credit, assets and management experience are acceptable to Mortgagee in its sole discretion, and the transferee complies with all of Mortgagee's then-current underwriting standards and practices;

(3)    at closing, Mortgagor and the proposed transferee execute and deliver to Mortgagee an Assumption Agreement and such other related documents in form and substance satisfactory to Mortgagee;

(4)    the terms of the purchase and the transfer of the Mortgaged Property are acceptable to Mortgagee;

(5)    the net annual income and fair market value of the Mortgaged Property has not diminished from the date hereof;

(6)    upon transfer of title a transfer fee equal to one (1%) percent of the then unpaid principal balance of the Debt is paid to Mortgagee; and

(7)    upon transfer of title the transferee pays any costs and expenses incurred by Mortgagee, including, but not limited to reasonable attorney's fees, a new appraisal of the Mortgaged Property (if requested by Mortgagee), a new Phase I environmental report (if requested by Mortgagee) and a policy of title insurance insuring the lien of this Agreement (if requested by Mortgagee).

**SECTION 1.08.    Leases and Leasing of the Mortgaged Property.**

(A)    Mortgagor will not (1) execute an assignment of the Rents or the Leases or any part thereof other than in favor of Mortgagee, (2) except as provided in Section 1.08(B) below, terminate or consent to the cancellation or surrender of any Lease or of any part thereof, now existing or hereafter to be made provided, however, that any Lease may be cancelled if contemporaneously with the cancellation or surrender thereof, a new Lease is entered into with a new Lessee having a credit standing, in the sole judgment of Mortgagee, at least equivalent to that of the Lessee whose Lease was cancelled, on substantially the same or better terms as the terminated or cancelled Lease, (3) except as provided in Section 1.08(B) below, modify any Lease so as to shorten the unexpired term thereof or so as to decrease the amount of the Rents payable thereunder, (4) accept prepayments of any installments of Rents to become due under the Leases for more than one (1) month in advance, except prepayments in the nature of security for the performance of the Lessees thereunder (which security shall not exceed two months rental payments under the Lease and/or payment of first (1st) month rent upon signing of the Lease), (5) enter into any new Leases without the prior written consent and approval of Mortgagee, except as permitted under Section 1.08(B) below, or (6) in any other manner impair the value of the Mortgaged Property or the security of this Agreement.

(B)    (1)    Mortgagor may take the following actions without Mortgagee's prior consent with respect to any lease for residential space at the Mortgaged Property having a term of two (2) years or less: (a) terminate or consent to the cancellation or surrender of any Lease or of any part thereof, where the Lessee is in default thereunder or in connection with a tenant buyout with respect to an under-market rent, or (b) enter into a new Lease or extend, modify, or renew any Lease or of any part thereof, now existing or hereafter to be made.

(2)    Mortgagor may take the following actions without Mortgagee's prior consent with respect to leases for commercial or retail space at the Mortgaged Property provided such actions are made in accordance with the conditions of Section 1.08(B)(3) below: (a) terminate or consent to the cancellation or surrender of any Lease or of any part

10

thereof, now existing or hereafter to be made, where the Lessee is in default thereunder, or (b) enter into a new Lease or extend, modify, or renew any Lease or of any part thereof, now existing or hereafter to be made.

(3)    Any lease for commercial or retail space at the Mortgaged Property made, modified, extended or renewed without Mortgagee's prior written consent must be done such that (a) the resulting rents are greater than or equal to the existing rent for the same space (or greater than or equal to the projected rent if such space is vacant on the date hereof), or (b) the resulting rents for the same space are made at the then-current market rates, provided that the resulting gross annual rental income for the Mortgaged Property is not less than the gross annual rental income as of the date hereof, and (c) (in the case of either (a) or (b)), such that the material lease terms are not more onerous to the landlord than the terms of the existing lease (if there is one).

(C)    Mortgagor will at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all Leases on the part of the lessor thereunder to be kept and performed and will at all times do all things necessary subject to the prudent course of business, to compel performance by the Lessee under each Lease of all obligations, covenants and agreements by such Lessee to be performed thereunder. If any Lease provides for the giving by the Lessee of certificates with respect to the status of the Leases, Mortgagor shall exercise its right to request such certificates within five (5) days after any demand therefor by Mortgagee.

(D)    From the date hereof, each Lease or Lease renewal shall provide that, (1) each Lease shall be subject and subordinate to this Agreement, and (2) in the event of the enforcement by Mortgagee of the remedies provided for by law or by this Agreement, the Lessee will, upon request of any party succeeding to the interest of Mortgagee, automatically become the Lessee of that party, without change in the terms or other provisions of such Lease, provided, however, that said successor in interest to Mortgagee shall not be bound by (a) any payment of Rent for more than one (1) month in advance, except prepayments in the nature of a security deposit for the performance by Lessee of its obligations under the Lease but only to the extent such security deposit has been actually delivered to Mortgagee, (b) any amendment or modification of the Lease made without the consent of Mortgagee except as permitted pursuant to the terms of this Agreement, and (c) any credits or offsets to which such Lessee shall claim entitlement under the Lease. Each Lease for commercial space shall also provide that, within ten (10) days after request by said successor in interest, Lessee shall execute and deliver an instrument or instruments confirming such attornment.

(E)    Reference is hereby made to Section 291-f of the Real Property Law of the State of New York for the purpose of obtaining for Mortgagee the benefits provided thereunder.

(F)    Mortgagor shall furnish to Mortgagee, within fifteen (15) days after a request by Mortgagee, but no more than two (2) times per year, a written statement containing the names of all Lessees, copies of their respective Leases, description of the space occupied and the Rents payable thereunder.

**SECTION 1.09.**    **Statement Pursuant to §13 of the New York Lien Law.**  Mortgagor will, in compliance with Section 13 of the New York Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the Improvements and will apply the same first to the payment of the cost of the Improvements before using any part of the total of the same for any other purpose.

**SECTION 1.10.**    (A)    **Waste.**  Mortgagor will not threaten, commit or permit any waste to the Mortgaged Property or make any change in the use of the Mortgaged Property which will in any way materially increase the risk of ordinary fire or other hazard arising out of construction or operation. Mortgagor will, at all times, maintain the Mortgaged Property in good operating order and safe condition and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements thereto.  The Improvements shall not be demolished, substantially altered or permitted to deteriorate, nor shall any Chattels be removed except where appropriate replacements are promptly made of value at least equal to the value of the removed Chattels.  Any replacement Chattels shall be owned by Mortgagor free and clear of any liens.

(B)    **Violations.**    Mortgagor shall, in its regular course of business, correct the conditions (each a "**Violation Condition**," and collectively, the "**Violation Conditions**") that give rise to any violation imposed against the

11

Mortgaged Property (each a "**Violation**," and collectively, the "**Violations**") and shall promptly seek to have any such Violation removed and discharged of record. For any Violation Condition that is unable to be corrected due to the tenant's failure to provide access, Mortgagor shall use commercially reasonable efforts to obtain access and correct the Violation Condition. Provided that (1) Mortgagor is diligently pursing the correction of Violation Conditions and the removal of Violations in its regular course of business and as provided above, and (2) no action has been brought by the City of New York, the State of New York or any other municipal or governmental agency as a result of any Violation(s), and (3) the presence of any Violation Conditions or any Violations has not caused any material adverse effect on the value or condition of the Mortgaged Property, then Mortgagor shall be considered to be in compliance with the Section 1.10(B).

(C)    **Right of Entry; Inspection.** During the term of this Agreement, Mortgagee shall have the right to enter and inspect the Mortgaged Property at reasonable times, upon reasonable notice.

SECTION 1.11.    **Condemnation.** (A)    Mortgagor shall promptly notify Mortgagee of the commencement of any proceedings for the condemnation of the Mortgaged Property (a "**Taking**") or any portion thereof. Mortgagee may participate in any such proceeding and may be represented therein by counsel of its selection at the expense of Mortgagor. Mortgagor from time to time will deliver to Mortgagee all instruments requested by it to permit or facilitate such participation. In the event of such condemnation proceedings, the award or compensation payable is hereby assigned to and shall be paid to Mortgagee. The proceeds of any award or compensation so received shall, at the option of Mortgagee, either be applied to the prepayment of the Debt (and such prepayment shall be subject to any applicable Prepayment Charge defined in the Note if the Debt is paid in full, but shall not be subject to the Prepayment Charge if the Debt is only partially prepaid and the Loan is intended to continue pursuant to its terms at the reduced Principal Amount), or be paid over to Mortgagor for restoration of the Mortgaged Property.

(B) Provided (1) the Mortgaged Property is capable of restoration, and (2) an Event of Default has not occurred and is continuing under this Agreement (beyond the expiration of any applicable notice or cure period), and (3) Mortgagor, promptly after the condemnation award is settled and/or awarded, proceeds with the restoration, replacement, rebuilding or repair (hereinafter collectively referred to as "**Restoration**") of the Mortgaged Property as nearly as possible to the condition they were in immediately prior to such Taking, then all awards received by Mortgagee on account of such Taking, less the actual cost, fees and expenses, if any, incurred in connection with the adjustment of the loss, shall be paid by Mortgagee out of such awards as restoration progresses. Requests for progress payments for Restoration shall be made and certified by a licensed engineer or construction coordinator retained by Mortgagor and approved by Mortgagee and shall be accompanied by a title company or official search, or other evidence satisfactory to Mortgagee, indicating that there are no vendor's, contractor's, mechanic's, laborer's or materialman's statutory or similar liens filed against the Mortgaged Property unless same have been bonded or otherwise discharged to the satisfaction of Mortgagee or except such as will be discharged upon payment of the sum requested.

If the award, less the actual cost, fees and expenses, if any, incurred in connection with the Taking, shall be insufficient to pay the entire cost of such Restoration, Mortgagor will promptly pay the deficiency. It is intended that no trust shall be created by the receipt by Mortgagee of any proceeds of condemnation, nor shall there be any obligation on Mortgagee to pay any interest thereon.

SECTION 1.12.    **Further Assurances; Compliance.** Mortgagor will, at its sole cost and expense, and without expense to Mortgagee, do, execute, acknowledge and deliver all additional acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee a security interest in the Mortgaged Property, or for carrying out the intention or facilitating the performance of the terms of this Agreement, and/or for filing, registering or recording this Agreement and, within ten (10) days after demand therefor, will execute and deliver, and hereby authorizes Mortgagee to execute and file in Mortgagor's name to the extent it may lawfully do so, one or more financing statements, chattel mortgages or security instruments and renewals thereof, to evidence more effectively the lien hereof upon the Chattels. Within ten (10) days of written request by or on behalf of Mortgagee, Mortgagor will execute any document or instrument that ought to have been signed at or before the date hereof or will re-execute any document or instrument incorrectly completed and/or signed in connection herewith including, but not limited to, any amendments, corrections, deletions, or additions to the Loan Documents executed in connection herewith, provided such amendments, corrections, deletions or additions are in conformity with the terms of the commitment between Mortgagee and Mortgagor

6990874.1

for the Loan. In the event Mortgagor fails to comply with the terms hereof in the time provided, Mortgagor hereby grants Mortgagee or Mortgagee's attorney a power-of-attorney for the sole purpose of executing or re-executing said document or instrument on Mortgagor's behalf, without additional notice.

**SECTION 1.13.    (A)    Evidence and Perfection of Lien.**    Mortgagor shall from time to time, cause this Agreement, and any security instrument creating a lien or evidencing the lien hereof upon the Chattels and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully protect the lien created hereby.

**(B)    Payment of Fees.**    Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the execution, delivery, recording and acknowledgment of this Agreement, any mortgage supplemental hereto, any security instrument with respect to the Chattels, and any instrument of further assurance, and all federal, state, county and municipal mortgage taxes, stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection thereof or any instrument of further assurance.

**SECTION 1.14.    Protective Advances.**    All sums paid by Mortgagee as advances to protect and preserve the lien of this Agreement and the interests of Mortgagee (collectively, "**Protective Advances**") shall be a lien upon the Mortgaged Property and shall be secured hereby. Protective Advances shall include, but shall not be limited to, any and all additional advances made by Mortgagee to complete Improvements or to preserve or protect the Mortgaged Property, or for any taxes, assessments or insurance premiums, or for the performance of any of Mortgagor's obligations hereunder or under any other document executed in connection with the Loan. Mortgagor will repay on demand all Protective Advances together with interest thereon at the Default Rate running from the date of written demand for repayment of same by Mortgagee, unless said Protective Advance is made in connection with an Event of Default by Mortgagor, in which case from the earlier of the date of written demand for the repayment of the Protective Advance or the date of the occurrence of such Event of Default.

**SECTION 1.15.    Mechanic's Liens.**    Mortgagor will pay or bond, from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part thereof, or on the revenues, Rents, issues, income and profits arising therefrom.

**SECTION 1.16    Obligation to Defend.**    If any action or proceeding be commenced, excepting an action to foreclose this Agreement or to collect the indebtedness hereby secured, to which action or proceeding Mortgagee is made a party by reason of the execution of this Agreement or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of this Agreement, all sums paid by Mortgagee for the expense of any litigation to prosecute or defend the transactions and the rights and lien created hereby (including reasonable attorneys' fees and disbursements) shall be paid by Mortgagor together with interest thereon from the date of payment by Mortgagee at the Default Rate. All such sums paid and the interest thereon shall be immediately due and payable, shall be a lien upon the Mortgaged Property, and shall be secured hereby.

**SECTION 1.17.    Changes in Laws Regarding Taxation.**    In the event of the passage after the date of this Agreement of any law deducting any lien from the value of the Land for the purpose of taxation, or changing in any way the laws now enforced for the taxation of mortgages or debts secured by mortgages, or the manner of the collection of any such taxes, so as to affect and lessen the net income on the indebtedness secured by this Agreement, the Debt secured by this Agreement, together with interest due thereon, shall, at the option of Mortgagee, become due and payable within ninety (90) days of the passage of any such legislation.

**SECTION 1.18.    Compliance with Laws.**    Mortgagor shall comply with, or cause to be complied with, all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers which may, as at the date of this Agreement or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways insofar as Mortgagor is required to comply therewith.

6990874.1

**SECTION 1.19.**    **Environmental Compliance and Indemnity.**

(A)    As used herein, the following terms shall have the following meanings:

"**Environmental Law**" means all present and future federal state and local statutes, laws, ordinances, rules, regulations, requirements, directives and common law doctrines that govern or apply or pertain to the protection of the environment and human health including, but not limited to, the federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §101 et seq.; Articles 1 through 72 of the New York State Environmental Conservation Law, and Article 12 of the New York State Navigation Law.

"**Environmental Condition**" means (i) the presence or Release (as hereinafter defined) or threatened Release of any Hazardous Substance (as hereinafter defined); (ii) the actual or threatened violation of any Environmental Law; (iii) grounds for or the commencement of any Regulatory Action (as hereinafter defined) or Third-Party Action (as hereinafter defined); and (iv) any other condition, event or circumstance that could subject Mortgagor or Mortgagee to potential liability under any Environmental Law.

"**Hazardous Substance**" means any substance, material or waste which is or may be governed by any Environmental Law, and any substance, material or waste that may pose a threat to human health or the environment. As used herein, the term Hazardous Substance includes, but is not limited to, petroleum and petroleum products and asbestos.

"**Regulatory Action**" means any claim, demand, judgment, consent order, consent decree, notice of violation, uniform appearance ticket, action or proceeding brought by or at the direction of any federal, state or local governmental authority pursuant to any Environmental Law including, but not limited to, any administrative, civil or criminal proceeding.

"**Release**" means any spilling, leaking, pumping, pouring, emitting, emptying, injecting, escaping, leaching, dumping or disposal of any Hazardous Substance. As used herein, the term Release includes, but is not limited to, a "discharge" as that term is defined in Article 12, §172(8) of the New York State Navigation Law.

"**Third-Party Action**" means any claim, notice of claim, action, proceeding or demand brought by any party alleging the violation of any Environmental Law or negligence, nuisance, trespass, strict liability, bodily injury or property damage in connection with, either directly or indirectly, an Environmental Condition.

(B)    Mortgagor represents and warrants that to the best of its knowledge after due inquiry:

(1)    Mortgagor is not aware of any Environmental Condition at, on or affecting the Mortgaged Property;

(2)    Neither Mortgagor nor any existing or prior owner or tenant of the Mortgaged Property is the subject of any Regulatory Action or Third-Party Action pertaining in any way to an Environmental Condition at, on or affecting the Mortgaged Property;

(3)    The Mortgaged Property is not currently used, nor has it been used in the past, by Mortgagor, prior owners, tenants or any other persons in a manner which violates any Environmental Law or which could create an Environmental Condition at, on or affecting the Mortgaged Property which could violate any such law or give rise to such liability; and

(4)    Mortgagor and all tenants of the Mortgaged Property are in compliance with all Environmental Laws pertaining to the Mortgaged Property.

(C)    Mortgagor covenants that:

14

(1)    Mortgagor shall not use or permit the use of the Mortgaged Property in a manner which creates an Environmental Condition;

(2)    Mortgagor shall not permit any federal, state or local environmental lien to be levied against the Mortgaged Property, even if such lien is subordinate to the lien of this Agreement;

(3)    Mortgagor shall provide Mortgagee with copies of any and all communications (including emails) received from or submitted to any federal, state or local governmental authority pertaining to any Environmental Condition at, on or affecting the Mortgaged Property within (5) days of Mortgagor's receipt or submission thereof.

(4)    Mortgagor and all Lessees of the Mortgaged Property shall possess and remain in strict compliance with all permits, licenses, registrations and authorizations pertaining to the Mortgaged Property and required under any Environmental Law;

(5)    Mortgagor shall not cause or permit a Release at, on or from the Mortgaged Property, except as authorized pursuant to an Environmental Law.

(6)    Mortgagor shall comply, and shall cause all Lessees to comply, with all Environmental Laws pertaining to any asbestos or asbestos-containing materials that are present at the Mortgaged Property, including any and all requirements pertaining to the renovation or demolition of the Mortgaged Property and the management of the asbestos-containing materials.

(7)    Mortgagor shall and shall cause all Lessees to comply with any obligations they may have under any Environmental Law affecting the Mortgaged Property, including but not limited to reporting requirements.

(8)    Mortgagor shall provide Mortgagee with a copy of any environmental assessment of the Mortgaged Property which Mortgagor obtains or receives, within ten (10) days of the date when Mortgagor obtains or receives the assessment.

(D)    Any misrepresentation or a breach of any warranty or covenant contained in this Section 1.19 shall be an Event of Default hereunder.

(E)    Until all sums due hereunder shall be repaid in full, Mortgagee may, provided it has reasonable cause to do so, conduct environmental assessments or tests to determine if an Environmental Condition exists at the Mortgaged Property. Such audits and tests shall be performed by an environmental consultant chosen by Mortgagee. Mortgagor shall pay to Mortgagee upon written demand the reasonable costs of such audits or tests. Any such environmental assessments shall be considered the property of Mortgagee, but Mortgagee shall provide a copy of such assessment(s) to Mortgagor. Mortgagee shall owe no duty of confidentiality to Mortgagor with respect to the contents of the assessments. It is hereby acknowledged by Mortgagor that Mortgagee shall not vouch for or assume any responsibility for the scope of detail, contents or accuracy of any such environmental assessment, and that neither Mortgagor nor any other party shall have any recourse to or claim against Mortgagee for any act of omission or commission of the environmental consultant. Mortgagor shall fully cooperate with the environmental consultant in its preparation of the assessment, including, but not limited to responding to questions of the consultant, providing the consultant with all necessary access at reasonable times and upon reasonable notice to the Mortgaged Property, the books and records of Mortgagor, and employees of Mortgagor, and Mortgagor shall cause all tenants of the Mortgaged Property to do the same. Mortgagee may also from time to time at the reasonable expense of Mortgagor procure the opinion of an attorney competent in environmental law when it believes such an opinion to be reasonably necessary, respecting the presence or possible presence of an Environmental Condition at, on or affecting the Mortgaged Property.

(F)    Mortgagee shall have the right to require, from time to time, a certification by Mortgagor and any commercial, retail or industrial tenants of the Mortgaged Property that there is no Environmental Condition at, on or affecting the Mortgaged Property. If an asbestos monitoring plan has been prepared in connection with the Mortgaged Property, Mortgagor must, from time to time and at the request of Mortgagee, show evidence of its compliance therewith.

15

(G)     To the fullest extent authorized by law and without regard to whether Mortgagor would have ultimate responsibility, Mortgagor shall fully defend, indemnify and hold harmless Mortgagee, its successors and assigns from and against any claim, action or proceeding pertaining in any way to an Environmental Condition at, on or affecting the Mortgaged Property, including any Regulatory Action or Third-Party Action, and including any claim, action or proceeding that seeks fines, penalties, recovery of investigation or clean-up costs, or recovery for bodily injury and property damage. The foregoing indemnity shall survive payment of the Note and satisfaction of this Agreement.  Any amounts which Mortgagor must pay to Mortgagee under this paragraph are payable upon written demand and, if unpaid, shall bear interest per annum at the Default Rate from the date of demand and such amounts, with interest, shall be added to the indebtedness secured hereby and shall be secured by this Agreement.

SECTION 1.20.    **Account Requirements.**    During the term of the Note and this Agreement, Mortgagor shall maintain the following accounts with Mortgagee: (1) the Auto-debit Account, (2) its Operating Account, (3) any other "deposit accounts" (as such term is defined in the Uniform Commercial Code) maintained in connection with the Mortgaged Property, and (4) its Tenant Security Account. (1), (2) and (3) above are collectively referred to herein as the "**Mortgagor Accounts.**"  The Mortgagor Accounts and the Tenant Security Accounts are collectively referred herein to as the "**Accounts.**"

SECTION 1.21.    **Indemnification.** Mortgagor covenants and agrees that no liability shall be asserted or enforced against Mortgagee, its officers, directors, employees or agents in connection with the Loan, the Note or this Agreement and Mortgagor shall indemnify and save Mortgagee harmless from and against any and all liabilities, obligations, losses, damages (including indirect, special, consequential and punitive damages), claims, costs, lost profits and expenses (including reasonable attorneys' fees and court costs) (collectively, "**Claims**") of whatever kind or nature which may be imposed on, incurred  by or asserted against Mortgagee, its officers, directors, employees or agents at any time by any third party which relate to or arise from, *inter alia*:  (a) any suit or proceeding (including probate and bankruptcy proceedings), or the threat thereof, in or to which Mortgagee its officers, directors, employees or agents may or do become a party, either as plaintiff or as a defendant, by reason of the Loan, the Note or this Agreement or for the purpose of protecting the lien of this Agreement; (b) the offer for sale or sale of all or any portion of the Mortgaged Property; (c) the ownership, leasing, use, operation or maintenance of the Mortgaged Property, if such Claims relate to or arise from actions taken prior to the surrender of possession of the Mortgaged Property to Mortgagee in accordance with the terms of this Agreement; and (d) the claims of any brokers engaged by Mortgagor in connection with the Loan; provided, however, that Mortgagor shall not be obligated to indemnify or hold Mortgagee, its officers, directors, employees or agents harmless from and against any Claims directly arising from the gross negligence or willful misconduct of Mortgagee, its officers, directors, employees or agents.  All costs provided for herein and paid for by Mortgagee shall be added to the Debt and shall become immediately due and payable upon demand by Mortgagee and with interest thereon from the date incurred by Mortgagee until paid in full at the Default Rate.

SECTION 1.22    **Single Purpose Entity.**    The Mortgagor represents and warrants that it is, and shall remain, a specifically-formed single-purpose entity and that it does not, and shall not:

(a)     engage in any business or activity other than the ownership, sale, operation and maintenance of the Mortgaged Property and activities incidental thereto;

(b)     acquire or own any material assets other than (i) the Mortgaged Property, and (ii) such incidental personal property as may be necessary for the operation of the Mortgaged Property;

(c)     merge into or consolidate with any Person or dissolve, terminate, liquidate or divide in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure. As used herein, the term "Person" shall mean an individual, partnership, limited partnership, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture or other entity of whatever nature;

(d)     fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, or, without the prior consent of the Mortgagee, amend, modify or terminate any provisions of its organizational documents which relate to separateness or which may hereafter be required by this Mortgage;

(e)     own any subsidiary or make any investment in any person or entity;

16

        (f)       commingle its assets with the assets of any of its general partners, managing members, affiliates or principals, or of any other person or entity;

        (g)      incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (i) the Debt, and (ii) indebtedness in the ordinary course of its business of owning and operating the Mortgaged Property, <u>provided</u> that such indebtedness is not evidenced by a note and is paid when due (but in any event, within sixty (60) days of the date incurred);

        (h)      become insolvent or fail to pay its debts and liabilities from its assets as the same shall become due;

        (i)       fail to maintain its records, books of account and bank accounts (if any) separate and apart from those of any other Person;

        (j)       partition, or seek to partition, the Mortgaged Property, or seek the dissolution or winding up, in whole or in part, of the Mortgagor;

        (k)      make any loans or advances to any third party, including any affiliate of the Mortgagor or entity in which any guarantor of the Loan owns a direct or indirect beneficial interest;

        (l)       fail to file its own tax returns, if required, unless part of the consolidated returns of another person;

        (m)     agree to, enter into or consummate any transaction which would render the Mortgagor insolvent; or

        (n)      file or consent to the filing of any bankruptcy or insolvency petition or otherwise institute insolvency proceedings with respect to itself or any entity in which it has a direct or indirect ownership interest.

## ARTICLE II

### EVENTS OF DEFAULT AND REMEDIES

        **SECTION 2.01**.   <u>**Events of Default.**</u>      If any of the following occur, each shall be an "**Event of Default**" and collectively, "**Events of Default**":

        (a)      if (1) default shall be made in the Monthly Payment or any other payment of principal, interest or other sums under the Note or this Agreement, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any payment or prepayment or otherwise, in each case, as in the Note and this Agreement provide, and such default shall have continued beyond the Monthly Payment Grace Period, or (2) default shall be made in the payment of any Taxes required hereunder to be paid by Mortgagor and said default shall have continued for a period of twenty (20) days or more after the applicable due date for said Taxes, without regard to any grace period provided by the applicable taxing authority (except with respect to real estate taxes for which Mortgagee is collecting escrow and for which sufficient funds exist to pay same in the Tax and Insurance Reserve); or

        (b)      if any warranty, representation or certification made by Mortgagor or Guarantor herein or in connection with the Loan shall be materially false at the time it was made; or

        (c)      if Mortgagor or any Guarantor shall: (1) make an assignment for the benefit of creditors; (2) file a petition in bankruptcy, under Title 11 of the U.S. Code, as amended (the "**Bankruptcy Code**"), or be adjudicated insolvent or bankrupt; (3) be the subject of an order for relief under the Bankruptcy Code, or petition or apply to any tribunal for the appointment of a receiver or a trustee for it or a substantial part of its assets; (4) file any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, whether now or hereafter in effect; (5) have filed against it a petition, application or proceeding described above in subsection (4) above and if such a petition, application or proceeding shall have been commenced against it, which remains un-dismissed or un-stayed for a period of ninety (90) days or more [any of <u>Section 2.01</u> (c)(1), (2), (3), (4) or (5) above a "**Bankruptcy Event**"]; (6) by any act or omission indicate its consent to, approval of or acquiescence in any petition, application or proceeding described above or in the appointment of a custodian, receiver or any trustee for it or any substantial part of any of its property; (7) suffer any such custodianship, receivership or trusteeship to continue un-discharged for a period of ninety (90) days or more; (8) conceal, remove or permit to be concealed or removed, any part of its property, with intent to hinder, delay or defraud its creditors or any of them; (9) make or suffer a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law; (10) make any transfer of its property to or for the benefit of a creditor

17

at a time when other creditors similarly situated have not been paid;  (11)  shall suffer or permit, while insolvent, any creditor to obtain a lien upon any of its property through legal proceedings or distraint which is not vacated within ninety (90) days from the date thereof, or  (12)  generally not pay its debts as such debts become due; or

(d)     if Mortgagor shall not maintain insurance coverage for the Mortgaged Property as required by Section 1.05 above; or

(e)     if default shall be made in the due observance or performance of any covenant or agreement on the part of Mortgagor or Guarantor hereunder or in the Note, or in any other document executed or delivered by Mortgagor in connection with the Debt; or

(f)     if, by order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of Mortgagor shall be appointed or if any municipality having jurisdiction over the Mortgaged Property commences an action related to uncured violations and such trustee, receiver or liquidator  shall not be discharged or dismissed within thirty (30) days after such appointment or such violation action shall not be dismissed within thirty (30) days after the return date specified on the complaint; or

(g)     in the event of any Material Adverse Change in the financial conditions of Mortgagor; or

(h)     if there should occur a default which is not cured within the applicable notice and cure period, if any, under any other mortgage or deed of trust of all or part of the Mortgaged Property, regardless of whether any such other mortgage or deed of trust is prior or subordinate to this Agreement; it being further agreed by Mortgagor that an Event of Default hereunder shall constitute an Event of Default under any such other mortgage or deed of trust held by Mortgagee. (This subsection (h) shall not be construed to imply that Mortgagee consents to any junior or senior lien or encumbrance); or

(i)     except as permitted pursuant to Section 1.07(B), if Mortgagor shall Transfer or agree to Transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein (including any air or development rights), or any Transfer of an interest in Mortgagor; or

(j)     if Mortgagor shall encumber, or agree to encumber, all or any portion of the Mortgaged Property, or any interest therein (including any air or development rights) without, in any such case, the prior written consent of Mortgagee. Consent to one such encumbrance shall not be deemed to be a waiver of the right to require consent to future or successive encumbrances; or

(k)     Mortgagor (or any other party) occupies or uses the Mortgaged Property (1) without first obtaining at least a temporary certificate of occupancy therefor or its equivalent and delivering a copy thereof to Mortgagee and/or (2) Mortgagor (or any other party) thereafter occupies in violation of such certificate of occupancy; or

(l)     in the event Mortgagor shall become in default, beyond the expiration of any applicable notice or cure periods, under the terms of any other loan or agreement with Mortgagee; or

(m)     if any judgment for $50,000.00 or more shall be rendered against Mortgagor or any Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from and after the date of entry thereof; or

(n)     if Mortgagor or any Guarantor fails to furnish to Mortgagee within the time periods set forth herein and after notice, financial statements and other financial information regarding Mortgagor or Guarantor required hereunder and/or any other documents executed in connection herewith; or

(o)     if the Accounts are not maintained with Mortgagee pursuant to Section 1.20 above.

Then and in every such case:

18

6990874.1

I.      **Interest Rate After Event of Default.**      After any Event of Default, interest shall accrue at the rate of twenty-four (24%) percent per annum (the **"Default Rate"**).  Notwithstanding the foregoing, except for an Event of Default under <u>Section 2.01</u>(a), (b), (c), (d), (i) or (j) above, Mortgagee will provide Mortgagor with notice of an Event of Default hereunder and provide thirty (30) days to cure same before accelerating the due date of the Debt and/or charging interest at the Default Rate. In such a case, Mortgagee shall also provide a reasonable extension to the period of time to cure such Event of Default before accelerating the due date of the Debt and/or charging interest at the Default Rate, provided that: (1) Mortgagor is diligently pursuing said cure to the satisfaction of Mortgagee, and (2) the failure to cure said Event of Default has not jeopardized the priority of Mortgagee's lien or had a material adverse impact on the value of the Mortgaged Property.  Whenever the Default Rate provided for herein shall apply, it shall continue to accrue and shall be paid on any amounts to which the Default Rate is applied until said amounts are paid in full.  In addition, in the event that Mortgagor fails to cure any Event of Default (regardless of whether or not a cure period is provided) and the due date of the Debt is subsequently accelerated as a result of such Event of Default, interest due hereunder shall be payable at the Default Rate <u>from the date of such Event of Default</u>.

II.      **Ability to Accelerate Due Date of Debt.**  During the continuance of any such Event of Default, Mortgagee, by notice given to Mortgagor, may declare the entire Debt then outstanding (if not then due and payable), and all accrued and unpaid interest thereon, to be due and payable immediately, and upon any such declaration the Debt outstanding and any accrued and unpaid interest shall become and be immediately due and payable, anything in the Note or in this Agreement to the contrary notwithstanding.

III.      **Right of Entry; Receiver.**  During the continuance of any such Event of Default, Mortgagee, or by its agents or attorneys, may enter into and upon all or any part of the Mortgaged Property, and each and every part thereof, and is hereby given a right and license and appointed Mortgagor's attorney in fact to do so, and may exclude Mortgagor, its agents and servants wholly therefrom; and having and holding the same, may use, operate, manage and control the Mortgaged Property and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and upon every such entry, Mortgagee, at the expense of Mortgagor, from time to time, either by purchase, repairs or construction, may maintain and restore the Mortgaged Property, whereof it shall become possessed as aforesaid, and may insure the same, and likewise, from time to time, at the expense of Mortgagor, Mortgagee may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may seem advisable; and in every such case Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of Mortgagor with respect thereto either in the name of Mortgagor or otherwise as it shall deem best; and Mortgagee shall be entitled to collect and receive all earnings, revenues, Rents, issues, profits and income of the Mortgaged Property and every part thereof, all of which shall for all purposes constitute property of Mortgagee, and in furtherance of such right, Mortgagee may collect the Rents payable under all Leases of the Mortgaged Property directly from the Lessees thereunder upon notice to each Lessee that an Event of Default exists hereunder accompanied by a demand on each Lessee for the payment to Mortgagee of all Rents due and to become due under its respective Lease. Mortgagor, for the benefit of Mortgagee and each Lessee hereby covenants and agrees that the Lessee shall be under no duty to question the accuracy of Mortgagee's statement of default and shall unequivocally be authorized to pay said Rents to Mortgagee without regard to the truth of Mortgagee's statement of the existence of an Event of Default such that the payment of Rent by the Lessee to Mortgagee pursuant to such a demand shall constitute performance in full of the Lessee's obligation under the Lease for the payment of Rents by the Lessee to Mortgagor; and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of all attorneys, independent contractors and agents, clerks, servants and other employees engaged and employed by Mortgagee, Mortgagee shall apply the moneys arising as aforesaid, first, to the payment of the Debt outstanding and the interest thereon, when and as the same shall become payable and second, to the payment of any other sums required to be paid by Mortgagor under the Note and/or this Agreement.

Under no circumstances shall Mortgagee have any duty to produce Rents from the Mortgaged Property. Regardless of whether or not Mortgagee, in person or by agent, takes actual possession of the Mortgaged Property, Mortgagee is not and shall not be deemed to be:  (a) a "mortgagee in possession" for any purpose; (b) responsible for

6990874.1

performing any of the obligations of the lessor under any Lease; (c) responsible for any waste, including, but not limited to waste committed by Lessees or any other parties, any dangerous or defective condition of the Mortgaged Property, or any negligence in the management, upkeep, repair or control of the Mortgaged Property; or (d) liable in any manner for the Mortgaged Property or the use, occupancy, enjoyment or operation of all or any part of it, except for such matters as may arise from the gross negligence or willful misconduct of Mortgagee.

IV.    **Foreclosure; Specific Performance.**    Mortgagee, with or without entry, personally or by its agents or attorneys, insofar as applicable, may:

(1)    institute proceedings for the complete or partial foreclosure of this Agreement; or

(2)    take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Agreement, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee shall elect.

**SECTION 2.02.    Foreclosure Sale; Adjournment; Execution of Instruments; Application of Proceeds.**

(A)    Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Agreement by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(B)    Upon the completion of any sale or sales made by an officer of any court empowered to do so, Mortgagor shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument or instruments conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. Mortgagee is hereby irrevocably appointed the true and lawful attorney of Mortgagor in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold, and for that purpose, Mortgagee may execute all necessary instruments of conveyance, assignment and transfer and may substitute one or more persons with like power.  Mortgagee hereby ratifies and confirms all acts that its said attorney or such substitute or substitutes shall lawfully do.  Nevertheless, Mortgagor, if requested by Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to Mortgagee or to such purchaser or purchasers, all said instruments as may be advisable in the sole judgment of Mortgagee, for the purpose and as may be designated in such request.  Any such sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the Mortgaged Property and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(C)    In the event of any sale or sales made under or by virtue of this Article II (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale), the entire principal of, and interest on, the Note, if not previously due and payable, and all other sums required to be paid by Mortgagor pursuant to this Agreement, immediately thereupon shall become due and payable, anything in the Note or in this Agreement to the contrary notwithstanding.

(D)    The purchase money proceeds or avails of any sale or sales made under or by virtue of this Article II, together with any other sums which then may be held by Mortgagee under this Agreement, whether under the provisions of this Article II or otherwise, shall be applied as follows:

FIRST:        To the payment of the costs and expenses of such sale, including reasonable compensation to Mortgagee, its agents and counsel, and of any judicial proceedings wherein the same may be made, and of all expenses, liabilities and advances made or incurred by Mortgagee under this Agreement, together with interest at the

20

Default Rate on all advances made by Mortgagee, and of all or other charges, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold.

        **SECOND:**      To the payment of the amount then due, owing or unpaid upon the Note for principal and interest, with interest on the unpaid principal at the Default Rate from and after the happening of any Event of Default described in <u>Section 2.01</u> hereof from the due date of any such payment until the same is paid.

        **THIRD:**      To the payment of any other sums required to be paid by Mortgagor pursuant to any provision of this Agreement or of the Note (including but not limited to any prepayment charge or premium), all with interest at the Default Rate, from the date such sums were or are required to be paid under this Agreement or the Note.

        **FOURTH:**      To the payment of the surplus, if any, to Mortgagor or to whomsoever may be lawfully entitled to receive the same.

    (E)    Upon any sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness secured by this Agreement the net sales price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which Mortgagee is authorized to deduct under this Agreement.

    **SECTION 2.03.**   **Payments Upon Default; Enforcement; Recovery of Judgment.** (A)    In the case when an Event of Default described in <u>Section 2.01</u> hereof shall have occurred and be continuing beyond any applicable notice and cure period, upon Mortgagee's acceleration of the due date of the Debt, Mortgagor will pay to Mortgagee all amounts which then shall have become due and payable under the Note (including but not limited to principal, all accrued interest and any prepayment charge or premium), and after the happening of said Event of Default will also pay to Mortgagee interest at the Default Rate on the then unpaid principal of the Note, and the sums required to be paid by Mortgagor pursuant to any provision of this Agreement, and in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to Mortgagee, its agents and counsel and any expenses incurred by Mortgagee hereunder. In the event Mortgagor shall fail forthwith to pay such amounts upon such demand, Mortgagee shall be entitled and empowered to institute such action or proceedings at law or in equity as may be advised by its counsel for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against Mortgagor and collect, out of the property of Mortgagor wherever situated as well as out of the Mortgaged Property, in any manner provided by law, monies adjudged or decreed to be payable with interest thereon at the Default Rate.

    (B)    Mortgagee shall be entitled to recover judgment as aforesaid either before, after or during the pendency of any proceedings for the enforcement of the provisions of this Agreement; and the right of Mortgagee to recover such judgment shall not be affected by any entry of sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the provisions of this Agreement, or the foreclosure of the lien hereof, and in the event of a sale of the Mortgaged Property, and of the application of the proceeds of sale as in this Agreement provided, to the payment of the Debt hereby secured, Mortgagee shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon, the Note, and to enforce payment of all other charges, payments and costs due under this Agreement, and shall be entitled to recover judgment for any portion of the Debt remaining unpaid, with interest at the Default Rate. In case of proceedings against Mortgagor in insolvency or bankruptcy or any proceedings for its reorganization or involving the liquidation of its assets, then Mortgagee shall be entitled to prove the whole amount of principal and interest due upon the Note to the full amount thereof, and all other payments, charges and costs due under this Agreement, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Mortgaged Property, provided, however, that in no case shall Mortgagee receive a greater amount than such principal and interest and such other payments, charges and costs due hereunder from the aggregate amount of the proceeds of the sale of the Mortgaged Property and the distribution from the estate of Mortgagor.

6990874.1

(C)    No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent, the lien of this Agreement upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before until the lien is satisfied.

(D)    Any monies collected by Mortgagee under this Section 2.03 shall be applied by Mortgagee in accordance with the provisions of clause (D) of Section 2.02 hereof.

SECTION 2.04.    **Appointment of Receiver.**  After the happening of any Event of Default and immediately upon the commencement of any action, suit or other legal proceedings by Mortgagee to obtain judgment for the principal of, or interest on, the Note and other sums required to be paid by Mortgagor pursuant to any provision of the Note and/or this Agreement, or of any other nature in aid of the enforcement of the Note or of this Agreement, Mortgagor will if required by Mortgagee, consent to the appointment of a receiver or receivers of the Mortgaged Property and of all the earnings, revenues, Rents, issues, profits and income thereof. After the happening of any Event of Default and during its continuance, and upon the commencement of any proceedings to foreclose this Agreement or to enforce the specific performance hereof, or in aid thereof, or upon the commencement of any other judicial proceeding to enforce any right of Mortgagee, Mortgagee shall be entitled, as a matter of right, if it shall so elect, without the giving of notice to any other party and without regard to the adequacy or inadequacy of any security for the indebtedness secured hereby, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, to the appointment of such a receiver or receivers.

SECTION 2.05.    **Retention of Possession and Control.**  Notwithstanding the appointment of any receiver, liquidator or trustee of Mortgagor, or of any of its property, or of the Mortgaged Property or any part thereof, Mortgagee shall be entitled to retain possession and control of all property now or hereafter held under this Agreement.

SECTION 2.06.    **Cumulative Remedies.** No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity, or by statute. No delay or omission of Mortgagee to exercise any right or power accruing upon any Event of Default shall impair any such right or power or shall be construed to be a waiver of any such Event of Default or any acquiescence therein; and every power and remedy given by this Agreement to Mortgagee may be exercised from time to time as often as may be deemed expedient by Mortgagee. Nothing in this Agreement or in the Note shall affect the obligation of Mortgagor to repay the Debt.

SECTION 2.07.    **Mortgagor's Waiver of Stay.** Mortgagor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Mortgaged Property, or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Agreement, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force, providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor, after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted, or redeem the property so sold or any part thereof, and Mortgagor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. Mortgagor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Mortgaged Property marshaled upon any foreclosure hereof. Mortgagor hereby agrees and consents that should it or any Guarantor be the subject of a Bankruptcy Event, Mortgagee shall thereupon be entitled, and Mortgagor irrevocably consents, to relief from any automatic stay imposed by Section 362 of the United States Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Mortgagee as provided herein or with respect to any other Loan Documents or as otherwise provided by law.

SECTION 2.08.    **Payment for Occupancy; Surrender of Possession.** During the continuance of any Event of Default and pending the exercise by Mortgagee of its right to exclude Mortgagor from all or any part of the Mortgaged

6990874.1

Property, if Mortgagor is using and occupying the Mortgaged Property, Mortgagor agrees to pay the fair and reasonable rental value for the use and occupancy of the Mortgaged Property, or any portion thereof, which is in its possession for such period and, upon default of any such payment, will vacate and surrender possession of the Mortgaged Property to Mortgagee or to a receiver, if any, and in default thereof may be evicted by any summary action or proceeding for the recovery of possession of Mortgaged Property for non-payment of rent, however designated.

**SECTION 2.09.    No Liability for Failure to Act or Loss to Mortgagor.** Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of:  (i) Mortgagee's exercise of or failure to exercise any rights, remedies, or powers granted to it in this Agreement or to perform or discharge any obligation or liability of Mortgagor under any agreement executed in connection with this Agreement; or (ii) any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in managing the Mortgaged Property, unless the loss is caused by the gross negligence or willful misconduct of Mortgagee.  Mortgagor hereby expressly waives and releases all liability of the types described above and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

**SECTION 2.10.    Recourse Obligations.** Notwithstanding anything to the contrary contained herein, except for Mortgagor's indemnity in favor of Mortgagee from and against any actual loss, cost, liability and expense which Mortgagee may incur in connection with:  (i) those matters set forth in Section 1.19 hereof; (ii) any acts or omissions constituting fraud or misrepresentation by Mortgagor in connection with applying for the Loan or in supplying information or documentation to Mortgagee subsequent to the date hereof; (iii) the misappropriation or misapplication of the Rents collected at the Mortgaged Property; (iv) liability for Rents or other income generated from the Mortgaged Property received by Mortgagor after an Event of Default under this Agreement and not applied to payments due under the Note or this Agreement or to ordinary recurring operating expenses of the Mortgaged Property; or (v) deliberate waste of the Mortgaged Property, the liability of Mortgagor, its permitted successors or assigns, under the Note or this Agreement is hereby strictly limited to the interest of Mortgagor, its permitted successors or assigns, in the Mortgaged Property and any judgment in favor of Mortgagee shall be satisfied only against the Mortgaged Property and may not be satisfied against any other asset of Mortgagor, and Mortgagee shall neither seek, demand, nor be entitled to obtain a deficiency judgment. Notwithstanding the foregoing, Mortgagee shall retain full recourse against Mortgagor and Guarantor for all sums due under the Note and this Mortgage in the event that Mortgagor commences a voluntary bankruptcy or insolvency proceeding or any involuntary bankruptcy or insolvency proceeding is commenced against Mortgagor by any person or entity (other than Mortgagee) and Mortgagor fails to use commercially reasonable, good faith efforts to obtain a dismissal of such proceedings or has acted in collusion with the party commencing such proceedings.

## ARTICLE III

### MISCELLANEOUS

**SECTION 3.01.    Severability.** In the event any one or more of the provisions contained in this Agreement or in the Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

**SECTION 3.02.    Notices.** All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by certified mail, return receipt requested or overnight mail by a nationally recognized courier, at each party's address above stated, or at such other address which a party shall have notified the other party in writing pursuant to the requirements herein.  Any written notice sent by certified mail, return receipt requested shall be deemed to have been served five (5) days after the date the same is mailed in accordance with the foregoing provisions. Notice sent by overnight carrier shall be deemed to have been served one (1) Business Day after the date same is mailed.  Whenever in this Agreement the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person(s) entitled to receive such notice.

23

6990874.1

SECTION 3.03.    **Covenants Run with Land; Successors and Assigns.**  All of the grants, covenants, terms, provisions and conditions herein shall run with the land and shall apply to, bind and inure to the benefit of, the successors and permitted assigns of Mortgagor and the successors and assigns of Mortgagee. If there is more than one mortgagor, the covenants and warranties hereof shall be joint and several. As used herein, the singular shall include the plural as the context requires.

SECTION 3.04.    **Usury.**  No provision in this Agreement or in the Note shall require the payment, or permit the collection of, interest in excess of the maximum amount permitted by law. Mortgagor shall not be obligated to pay any interest in excess of such maximum amount. Any interest paid by Mortgagor in excess of the maximum legal rate of interest shall be retained by Mortgagee as additional cash collateral for repayment of the Debt.

SECTION 3.05.    **Counterparts.**  This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes deemed to be an original; and all such counterparts shall together constitute but one and the same mortgage.

SECTION 3.06.    **Statement Pursuant to §254 of New York Real Property Law.**  The covenants and conditions contained herein shall be construed as affording to Mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions of Section 254 of the Real Property Law of the State of New York.

SECTION 3.07.    **Mortgagee's Right to Sell, Participate.**  Mortgagee may sell and transfer interests in the Loan to one or more participants with or without notice to Mortgagor and all documentation, financial statements, appraisals and other data, or copies thereof, relevant to Mortgagor, may be exhibited to, and retained by, any such participant or prospective participant.

SECTION 3.08.    **Modification in Writing.**  This Agreement may not be changed, waived, discharged or terminated, except by an instrument in writing signed by Mortgagee.

SECTION 3.09.    **Security Agreement.**  This Agreement shall be deemed to be a security agreement pursuant to the Uniform Commercial Code of the State of New York.  Mortgagor shall be the debtor, Mortgagee shall be the secured party and the collateral shall be the Mortgaged Property to the extent same may be secured by a Uniform Commercial Code security agreement and/or a UCC-1 Financing statement.

SECTION 3.10.    **Time of the Essence.**  All time periods provided herein shall be deemed to be of the essence.

SECTION 3.11.    **Severance of Lien.**  At the sole election of Mortgagee, this Agreement and the Note may be split or divided into two or more notes and mortgages constituting liens on the Mortgaged Property or portions thereof in such principal amounts as Mortgagee shall designate but in no event to exceed the aggregate principal amount evidenced by the Note and secured, or which may under any contingency be secured, by this Agreement. Mortgagor, upon the request of Mortgagee, shall execute, acknowledge and deliver to Mortgagee and/or its designee or designees such documents as may be necessary to effectuate the foregoing, including, without limitation, such supplemental or substitute mortgages, assignments of rents and leases, security agreements, supplemental or replacement notes and other documents as Mortgagee may require.  Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact, coupled with an interest, to execute any documents and take any other steps, in Mortgagor's name or otherwise, and at Mortgagor's expense in order to effectuate any or all of the foregoing.

SECTION 3.12.    **Statement Pursuant to §253-1a of New York State Tax Law.**  This Agreement covers property improved by one or more structures containing in the aggregate more than six (6) residential dwelling units, each having their own separate cooking facilities.

SECTION 3.13.    **Waiver of Jury Trial.**  MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS, OR ANY

6990874.1

CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.

**SECTION 3.14.** **Other Judicial Waivers.** Mortgagor hereby expressly and unconditionally waives, in connection with any suit, action or proceeding brought by or on behalf of Mortgagee on this Agreement, any and every right Mortgagor may have to (i) interpose any defense based upon any statute of limitations or any claims of laches, (ii) injunctive relief, (iii) interpose any counterclaim therein (other than compulsory counterclaims), and (iv) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit Mortgagor from instituting or maintaining a separate action against Mortgagee with respect to any asserted claim.

**SECTION 3.15.** **Governing Law; Venue.** This Agreement, and the rights and obligations of the parties hereunder, shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Mortgagor hereby irrevocably: (a) agrees that any legal action or proceeding arising out of or relating to this Agreement may be brought in the courts of the State of New York in any county or of the United States of America for the Eastern or Southern Districts of New York, as Mortgagee may elect, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Any such suit, action or proceeding shall be initiated by any methods of service provided for under applicable law. Nothing contained herein shall affect the right of Mortgagee to bring any suit, action or proceeding against Mortgagor or its property in the courts of any other jurisdiction.

**SECTION 3.16.** **Nature of Relationship Limited.** Nothing contained in this Agreement or the Note or any other document executed and/or delivered in connection herewith shall be deemed or construed to create a partnership or joint venture or any other relationship between Mortgagor and Mortgagee other than that of borrower and lender, respectively.

**SECTION 3.17.** **Right of Set Off.** Mortgagor hereby pledges and grants to Mortgagee a continuing lien, security interest and right of set off as security for all liabilities and obligations to Mortgagee, whether now existing or hereafter arising upon and against all Mortgagor Accounts (as defined in Section 1.20 above), and the monies contained therein, certificates of deposit, credits and/or any other instruments or securities in the possession, custody, safekeeping or control of Mortgagee, its successors and/or assigns or in transit to any of them (collectively, the "**Secured Accounts**"). Mortgagee shall have the right to set-off, without notice to Mortgagor, against any liability or obligation of Mortgagor, including but not limited to interest, principal, Tax and Insurance Reserves, fees or other charges due in connection with the Note or this Agreement from the Secured Accounts. ANY AND ALL RIGHTS TO REQUIRE MORTGAGEE TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE OBLIGATIONS, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF MORTGAGOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

**SECTION 3.18.** **Future Assignment of this Agreement.** Upon payment in full of all sums due under the Note and this Agreement, at the request of Mortgagor, Mortgagee will assign the Agreement to a new lender upon payment of an assignment fee not to exceed $1,000.00 to Mortgagee and upon the payment of Mortgagee's reasonable attorney's fees for the preparation and delivery of the assignment of mortgage. Nothing herein contained shall impose any liability on Mortgagee for the loss of any documents, including but not limited to the Note or the recorded Agreement. In connection with any lost notes, Mortgagee shall execute a lost note affidavit on a form Mortgagee deems acceptable.

**SECTION 3.19.** **Interpretation of Provisions.** The parties hereto acknowledge that each has been represented by counsel in connection with the Loan. Accordingly, any rule or law or any legal decision that would require the interpretation of any claimed ambiguities in the Note, this Agreement or any of the other Loan Documents against the party that drafted it has no application and is expressly waived by the other parties hereto. The provisions of the Note, this

6990874.1

Agreement and the other Loan Documents shall be interpreted in a reasonable manner to give effect to the intent of the parties hereto.

SECTION 3.20.    **Paragraph Headings.** The paragraph headings are for reference only and shall not affect the interpretation or meaning of any provisions of this Agreement and shall not limit the rights of Mortgagee with respect to any of the subject matter set forth therein.

SECTION 3.21.    **Tenants in Common.** As of the date hereof, the Mortgagor consists of multiple co-owner limited liability companies that own the Mortgaged Property as tenants in common (each existing co-owner tenant in common and any successor co-owner tenant in common are referred to herein individually as a "Co-Owner TIC" and collectively as "Co-Owner TICs"). For so long as the Mortgagor consists of two or more Co-Owner TICs, the following covenants shall apply:

(a)    The Mortgaged Property, the Mortgagor and all Co-Owner TICs are subject to a co-tenancy agreement dated as of December, 2017  Mortgagor certifies and warrants to Mortgagee that there are no other co-tenancy agreements in existence. (Such co-tenancy agreement so approved by Mortgagee and any other co-tenancy agreement(s) now or hereafter in existence between or among any or all Co-Owner TICs are collectively referred to herein as a "Co-Tenancy Agreement".) If recorded, the Co-Tenancy Agreement shall be recorded following the recording hereof and, in any event, the Co-Tenancy Agreement shall be deemed to have been recorded after the date and time of recording of this Mortgage regardless of the actual recording dates and times of any Co-Tenancy Agreement and this Instrument. No termination, modifications or waivers of any Co-Tenancy Agreement may be made without Mortgagee's prior written consent in its sole discretion. Mortgagee shall be named in any Co-Tenancy Agreement (and is hereby designated, notwithstanding any omission in any Co-Tenancy Agreement) as a third-party beneficiary of any Co-Tenancy Agreement and may enforce the provisions thereof against any party to any Co-Tenancy Agreement. Any Co-Tenancy Agreement shall be deemed to include all the provisions of this Section 3.21 and the provisions of the following Section 3.22 to the same extent as if fully set forth in any Co-Tenancy Agreement. Any conflicts between such Sections and any Co-Tenancy Agreement shall be resolved in favor of such Sections which shall be deemed to supersede and prevail. Any Co-Tenancy Agreement shall not and shall not be deemed to amend the provisions of such Sections, any other provisions of this Instrument or any Loan Document.

(b)    Any Co-Tenancy Agreement will be and remain subject and subordinate to, and hereby is subjected and subordinated to, the lien of this Instrument, to all provisions hereof and to all of the terms, conditions, agreements, requirements and restrictions set forth in this Instrument and the other Loan Documents. Without limitation, all payments required under the Loan Documents have priority over all distributions to the Co-Owner TICs as provided for in any Co-Tenancy Agreement or any other agreement.

(c)    The transfer of any interest in the Mortgage Property between Co-Owner TICs shall constitute a Transfer under Section 1.07 of this Instrument.

(d)    Each Co-Owner TIC agrees that the party charged with managing the tenancy in common or receiving notices on behalf of the tenancy in common is the Co-Owner TIC designated in the current Co-Tenancy Agreement so approved by Mortgagee as described in paragraph "(a)", immediately above, and Mortgagor shall cause such Co-Owner TIC to deliver to Mortgagee, within ten (10) days after such party's receipt, a true and correct copy of each material notice, demand, complaint or request made or given with respect to such co-tenancy agreement or with respect to any other Co-Tenancy Agreement.

(e)    Notwithstanding anything to the contrary herein, in the other Loan Documents or in any Co-Tenancy Agreement, each Co-Owner TIC hereby waives its right to bring a partition action with respect to the Mortgaged Property, whether such right arises under statute or other applicable law, and agrees that by doing so each Co-Owner TIC has waived its right to apply to a court to (i) have the Mortgaged Property physically divided so that its tenancy in common interest in the Mortgaged Property can be sold separately from the whole of the Mortgaged Property, (ii) cause the whole or any part of the Mortgaged Property to be sold and the proceeds of such sale distributed to any of the Co-Owner TICs or (iii) to have the Mortgaged Property otherwise divided or partitioned.

(f)       If one or more Co-Owner TICs were to file for relief under the United States Bankruptcy Code, 11 U.S.C. Section 101 et seq., as amended from time to time (the "Bankruptcy Code"), then each Co-Owner TIC hereby agrees as follows:

(1)       Each Co-Owner TIC assigns to Mortgagee, as additional security for the Debt, Co-Owner TIC's right to reject any Co-Tenancy Agreement under Section 365 of the Bankruptcy Code after the occurrence of a Bankruptcy Event involving any Co-Owner TIC.

(2)       Each Co-Owner TIC agrees not to seek sale of the tenancy in common interest separate and apart from the whole of the Mortgaged Property.  Each Co-Owner TIC acknowledges and agrees that the detriment to the interest of the other Co-Owner TICs outweighs the benefit to the Co-Owner TIC.  In any event, Co-Owner TIC shall give Mortgagee written notice, at least ten (10) business days in advance, of the date on which such Co-Owner TIC intends to apply to the Bankruptcy Court for authority and permission to sell its tenancy in common interest.

### SECTION 3.22.    Additional Suretyship Waivers.

Each Co-Owner TIC comprising Mortgagor, with respect to the other Co-Owner TIC, hereby agrees as follows:

(a)       Mortgagor hereby waives the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of the Note, this Instrument or any other Loan Document and agrees that Mortgagor's obligations shall not be affected by any circumstances, whether or not referred to in this Instrument, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor.  Mortgagor hereby waives the benefits of any right of discharge under any and all statutes or other Laws relating to guarantors or sureties and any other rights of sureties and guarantors thereunder.  Mortgagor also waives, to the fullest extent permitted by law, all rights to require Mortgagee to (a) proceed against a Co-Owner TIC or any Guarantor or Indemnitor, (b) if a Co-Owner TIC is a partnership, proceed against any general partner (direct or indirect, limited or general) of such Co-Owner TIC, (c) if a Co-Owner TIC is another type of entity, proceed against any owner or principal (direct or indirect) of such Co-Owner, or (d) pursue any other remedy it may now or hereafter have against any Co-Owner TIC or any principal or owner thereof (direct or indirect).

(b)       At any time or from time to time and any number of times, without notice to Mortgagor and without affecting the liability of Mortgagor, (i) the time for a Co-Owner TIC's performance of or compliance with any covenant or agreement contained in this Instrument or any other Loan Document affecting the Mortgaged Property owned by Co-Owner TIC, whether presently existing or hereinafter entered into, may be extended by Mortgagee or such performance or compliance may be waived by Mortgagee; and (ii) any security for the Debt may be modified, exchanged, surrendered or otherwise dealt with or additional security may be pledged or mortgaged for the Debt as Mortgagee may agree to.

(c)       Any indebtedness of s Co-Owner TIC held by Mortgagor now or in the future is and shall be subordinated (and is hereby subordinated) to the Debt and any such indebtedness of a Co-Owner TIC shall be collected, enforced and received by Mortgagor, as trustee for Mortgagee, but without reducing or affecting in any manner the liability of Mortgagor under the other provisions of the Note, this Mortgage or the other Loan Documents.

(d)       Mortgagor shall have no right of, and hereby waives any claim for, subrogation or reimbursement against a Co-Owner TIC or any partner, member or other principal or owner (direct or indirect) of a Co-Owner TIC by reason of any payment by Mortgagor of the Debt, whether such right or claim arises at law or in equity or under any contract or statute, until the Debt has been paid in full and there has expired the maximum possible period thereafter during which any payment made by a Co- Owner TIC to Mortgagee with respect to the Debt could be deemed a preference under the United States Bankruptcy Code.

(e)       If any payment by any Co-Owner TIC is held to constitute a preference under any applicable bankruptcy, insolvency, or similar Laws, or if for any other reason Mortgagee is required to refund any sums to any Co-Owner TIC, such refund shall not constitute a release of any liability of Mortgagor under the Note, the Security Instrument or any other Loan Documents.  It is the intention of Mortgagee and Mortgagor that Mortgagor's obligations under the Note, the Mortgage

27

and any other Loan Documents shall not be discharged except by Mortgagor's performance of such obligations and then only to the extent of such performance.

[NO FURTHER TEXT ON THIS PAGE]

28

[Signature Page to Consolidation, Extension, Modification and Security Agreement]

**IN WITNESS WHEREOF,** this Agreement has been duly executed by Mortgagor and Mortgagee as of the date first set forth above.

**FC 2501 LLC**

By:_____
        JASON WISOTSKY
        Manager

**MIZ3 LLC**

By:_____
        JASON WISOTSKY
        ~~Manager~~ Authorized Signatory

**FC 1191 LLC**

By:_____
        JASON WISOTSKY
        Manager

**CAPITAL ONE, NATIONAL ASSOCIATION**

By:_____
        KI KIM
        Vice President

[Signature Page to Consolidation, Extension, Modification and Security Agreement]

**IN WITNESS WHEREOF,** this Agreement has been duly executed by Mortgagor and Mortgagee as of the date first set forth above.

**FC 2501 LLC**

By:_____
      **JASON WISOTSKY**
      **Manager**

**MIZ3 LLC**

By:_____
      **JASON WISOTSKY**
      **Manager**

**FC 1191 LLC**

By:_____
      **JASON WISOTSKY**
      **Manager**

**CAPITAL ONE, NATIONAL ASSOCIATION**

By:_____
      **KI KIM**
      **Vice President**

[Acknowledgment Page to Consolidation, Extension, Modification and Security Agreement]

STATE OF NEW YORK          }
                           }          ss:
COUNTY OF Rockland         }

On the 15 day of November, in the year 2019, before me, the undersigned, a Notary Public in and for said State,  personally appeared JASON WISOTSKY, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

AVRAHAM Y OBERMEISTER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OB6146516
Qualified in Rockland County
My Commission Expires 05-22-2022

STATE OF NEW YORK          }
                           }          ss:
COUNTY OF SUFFOLK          }

On the 20th day of November, in the year 2019, before me, the undersigned, a Notary Public in and for said State,  personally appeared KI KIM, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

MARI-JO KASSIOTIS
Notary Public, State of New York
No. 01KA5083266
Qualified in Nassau County
Commission Expires August 11, 20 21

# LANDMARK ABSTRACT AGENCY LLC
### as Agent for
### Old Republic National Title Insurance Company

### SCHEDULE A DESCRIPTION

Title Number:  **LAA3652**

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Newkirk Avenue with the easterly side of East 25th Street;

RUNNING THENCE northerly, along the easterly side of East 25th Street, 140 feet;

THENCE easterly, parallel with Newkirk Avenue, 100 feet to the center line of the block;

THENCE southerly, along the center line of the block parallel with East 25th Street, 140 feet to the northerly side of Newkirk Avenue;

THENCE westerly, along the northerly side of Newkirk Avenue, 100 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Property Address: 2501-2511 Newkirk Avenue a/k/a 417 East 25th Street, Brooklyn, NY
Block: 5212  Lot: 24

## Exhibit B

All instruments recited herein have been recorded or are intended to be recorded in the Office of the City Register for Kings County

Mortgage 1
| | |
|---|---|
| Mortgagor: | Tony Di Piazza |
| Mortgagee: | George Shapiro |
| Mortgage Amount: | $239,000.00 |
| Dated: | August 3, 1984 |
| Recorded: | August 29, 1984 |
| Reel: | 1545 |
| Page: | 812 |
| Mortgage Tax Paid: | $3,585.00 |

Assignment of Mortgage (1a)
| | |
|---|---|
| Assignor: | George Shapiro |
| Assignee: | Kadilac Mortgage Bankers Ltd. |
| Dated: | April 27, 1988 |
| Recorded: | June 1, 1988 |
| Reel: | 2222 |
| Page: | 446 |

Assigns Mortgage 1.

Multifamily Mortgage, Assignment of Rents and Security Agreement 2
| | |
|---|---|
| Mortgagor: | Tony DiPiazza |
| Mortgagee: | Kadilac Mortgage Bankers Ltd. |
| Mortgage Amount: | $841,981.05 |
| Dated: | April 27, 1988 |
| Recorded: | June 1, 1988 |
| Reel: | 2222 |
| Page: | 450 |
| Mortgage Tax Paid: | $18,945.00 |

Consolidation, Extension and Modification Agreement (2a)
| | |
|---|---|
| Mortgagor: | Tony DiPiazza |
| Mortgagee: | Kadilac Mortgage Bankers Ltd. |
| Dated: | April 27, 1988 |
| Recorded: | June 1, 1988 |
| Reel: | 2222 |
| Page: | 460 |

Which agreement, by its terms, consolidates Mortgages 1 and 2 to form a single lien in the principal amount of $1,010,000.00.

6938972.1

Assignment of Mortgage (2b)
Assignor:          Kadilac Mortgage Bankers Ltd.
Assignee:          Federal Home Loan Mortgage Corporation
Dated:             April 27, 1988
Recorded:          June 1, 1988
Reel:              2222
Page:              448

Assigns Mortgages 1 and 2 as consolidated.

Assignment of Mortgage (2c)
Assignor:          Federal Home Loan Mortgage Corporation
Assignee:          Apple Bank for Savings
Dated:             May 5, 1998
Recorded:          June 24, 1998
Reel:              4226
Page:              2129

Assigns Mortgages 1 and 2 as consolidated.

Mortgage 3
Mortgagor:         25-01 Newkirk Avenue, LLC
Mortgagee:         Apple Bank for Savings
Mortgage Amount:   $89,650.63
Dated:             May 7, 1998
Recorded:          June 24, 1998
Reel:              4226
Page:              2142
Mortgage Tax Paid: $1,794.00

Consolidation, Extension and Modification Agreement (3a)
Mortgagor:         25-01 Newkirk Avenue, LLC
Mortgagee:         Apple Bank for Savings
Dated:             May 7, 1998
Recorded:          June 24, 1998
Reel:              4226
Page:              2150

Which agreement, by its terms, consolidates Mortgages 1, 2 and 3 to form a single lien in the principal amount of $1,020,000.00.

6938972.1

<u>Assignment of Consolidated Security Instruments (3b)</u>
| | |
|---|---|
| Assignor: | Apple Bank for Savings |
| Assignee: | Federal Home Loan Mortgage Corporation |
| Dated: | May 7, 1998 |
| Recorded: | June 24, 1998 |
| Reel: | 4226 |
| Page: | 2135 |

Assigns Mortgages 1, 2 and 3 as consolidated.

<u>Assignment of Mortgage (3c)</u>
| | |
|---|---|
| Assignor: | Federal Home Loan Mortgage Corporation |
| Assignee: | New York Community Bank |
| Dated: | May 10, 2004 |
| Recorded: | May 5, 2005 |
| CRFN: | 2005000262816 |

Assigns Mortgages 1, 2 and 3 as consolidated.

<u>Mortgage 4</u>
| | |
|---|---|
| Mortgagor: | 25-01 Newkirk Avenue, LLC |
| Mortgagee: | New York Community Bank |
| Mortgage Amount: | $1,188,840.98 |
| Dated: | May 28, 2004 |
| Recorded: | May 5, 2005 |
| CRFN: | 2005000262817 |
| Mortgage Tax Paid: | $32,692.00 |

<u>Consolidation, Modification and Extension Agreement (4a)</u>
| | |
|---|---|
| Mortgagor: | 25-01 Newkirk Avenue, LLC |
| Mortgagee: | New York Community Bank |
| Dated: | May 28, 2004 |
| Recorded: | May 5, 2005 |
| CRFN: | 2005000262818 |

Which agreement, by its terms, consolidates Mortgages 1, 2, 3 and 4 to form a single lien in the principal amount of $2,100,000.00.

<u>Assignment of Mortgage (4b)</u>
| | |
|---|---|
| Assignor: | New York Community Bank |
| Assignee: | NCC Properties Group LLC |
| Dated: | January 18, 2012 |
| Recorded: | February 1, 2012 |
| CRFN: | 2012000045144 |

Assigns Mortgages 1, 2, 3 and 4 as consolidated.

6938972.1

Gap Mortgage 5
Mortgagor:                Newkirk Realty Holdings 2501 LLC
Mortgagee:                NCC Properties Group LLC
Mortgage Amount:          $2,087,513.18
Dated:                    January 18, 2012
Recorded:                 February 1, 2012
CRFN:                     2012000045147
Mortgage Tax Paid:        $58,450.01

Mortgage Consolidation, Modification and Extension Agreement (5a)
Mortgagor:                Newkirk Realty Holdings 2501 LLC
Mortgagee:                NCC Properties Group LLC
Dated:                    January 18, 2012
Recorded:                 February 1, 2012
CRFN:                     2012000045148

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4 and 5 to form a single lien in
the principal amount of $3,900,000.00.

Assignment of Mortgage (5b)
Assignor:                 NCC Properties Group LLC
Assignee:                 BCB Community Bank
Dated:                    March 16, 2012
Recorded:                 March 29, 2012
CRFN:                     2012000124687

Assigns Mortgages 1, 2, 3, 4 and 5 as consolidated.

Mortgage Consolidation, Modification & Extension Agreement (5c)
Mortgagor:                Newkirk Realty Holdings 2501 LLC
Mortgagee:                BCB Community Bank
Dated:                    March 20, 2012
Recorded:                 March 29, 2012
CRFN:                     2012000124688

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4 and 5 to form a single lien in
the principal amount of $3,900,000.00.

Assignment of Mortgage (5d)
Assignor:                 BCB Community Bank
Assignee:                 BankUnited, N.A.
Dated:                    October 31, 2013
Recorded:                 November 12, 2013
CRFN:                     2013000464606

Assigns Mortgages 1, 2, 3, 4 and 5 as consolidated.

<u>Gap Mortgage 6</u>
Mortgagor:                  Newkirk Realty Holdings 2501 LLC
Mortgagee:                  BankUnited, N.A.
Mortgage Amount:            $880,940.28
Dated:                      November 5, 2013
Recorded:                   November 12, 2013
CRFN:                       2013000464607
Mortgage Tax Paid:          $24,665.21

<u>Consolidation and Extension Agreement (6a)</u>
Mortgagor:                  Newkirk Realty Holdings 2501 LLC
Mortgagee:                  BankUnited, N.A.
Dated:                      November 5, 2013
Recorded:                   November 12, 2013
CRFN:                       2013000464608

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5 and 6 to form a single lien in the principal amount of $4,650,000.00.

<u>Gap Mortgage 7</u>
Mortgagor:                  Newkirk Realty Holdings 2501 LLC
Mortgagee:                  BankUnited, N.A.
Mortgage Amount:            $1,758,506.78
Dated:                      March 6, 2015
Recorded:                   March 13, 2015
CRFN:                       2015000086729
Mortgage Tax Paid:          $49,238.01

<u>Consolidation and Extension Agreement (7a)</u>
Mortgagor:                  Newkirk Realty Holdings 2501 LLC
Mortgagee:                  BankUnited, N.A.
Dated:                      March 6, 2015
Recorded:                   March 13, 2015
CRFN:                       2015000086730

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5, 6 and 7 to form a single lien in the principal amount of $6,300,000.00.

<u>Assignment of Mortgage (7b)</u>
Assignor:                   BankUnited, N.A.
Assignee:                   Connect One Bank
Dated:                      February 1, 2018
Recorded:                   February 22, 2018
CRFN:                       2018000063134

Assigns Mortgages 1, 2, 3, 4, 5, 6 and 7 as consolidated.

6938972.1

Mortgage (Gap) 8

| | |
|---|---|
| Mortgagor: | FC 2501 LLC, MIZ3 LLC and FC 1191 LLC |
| Mortgagee: | ConnectOne Bank |
| Mortgage Amount: | $1,171,849.07 |
| Dated: | February 1, 2018 |
| Recorded: | February 22, 2018 |
| CRFN: | 2018000063135 |
| Mortgage Tax Paid: | $32,810.40 |

Consolidation, Extension and Modification Agreement (8a)

| | |
|---|---|
| Mortgagor: | FC 2501 LLC, MIZ3 LLC and FC 1191 LLC |
| Mortgagee: | ConnectOne Bank |
| Dated: | February 1, 2018 |
| Recorded: | February 22, 2018 |
| CRFN: | 2018000063136 |

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5, 6, 7 and 8 to form a single lien in the principal amount of $7,100,000.00.

**Assignment of Mortgage (8b)**

| | |
|---|---|
| Assignor: | ConnectOne Bank |
| Assignee: | Capital One, National Association |
| Dated: | November 20, 2019 |
| Recorded | to be duly recorded |

Assigns Mortgages 1, 2, 3, 4, 5, 6, 7, and 8 as consolidated. Upon which Mortgages there remains an unpaid principal balance in the amount of $7,000,687.75.

**Gap Mortgage 9**

| | |
|---|---|
| Mortgagor: | FC 2501 LLC, MIZ3 LLC and FC 1191 LLC |
| Mortgagee: | Capital One, National Association |
| Mortgage Amount: | $1,199,312.25 |
| Dated: | November 20, 2019 |
| Recorded: | to be duly recorded |
| Mortgage Tax Paid: | $33,580.74 |

6938972.1

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2019112700470003002S8356

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2019112700470003**  Document Date: 11-20-2019  Preparation Date: 12-02-2019
Document Type: AGREEMENT

---

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                      16

**SECTION 255 AFFIDAVIT (CEM)**

| | |
|---|---|
| STATE OF NEW YORK | } |
| | } ss.: |
| COUNTY OF SUFFOLK | } |

JASON WISOTSKY, being duly sworn, deposes and says:

I am the Manager of each of FC 2501 LLC, AND FC 1191 LLC, and the Authorized Signatory of MIZ3 LLC, the owners of the property encumbered by the mortgages hereinafter described and, as such, I am familiar with the facts set forth herein:

**SEE SCHEDULE OF MORTGAGES ATTACHED**

The mortgage tax due on the aforesaid mortgages was paid in full at the time of recording.

There is offered for recording simultaneously herewith a Consolidation, Extension, Modification and Security Agreement (the "**Agreement**") dated November 20, 2019 between FC 2501 LLC, MIZ3 LLC, AND FC 1191 LLC and CAPITAL ONE, NATIONAL ASSOCIATION.  Any mortgage tax due for any new indebtedness secured by the Agreement is being tendered simultaneously therewith.

After the maximum amount became secured thereby no reloans or readvances have become secured thereunder to the date of execution of the said supplemental instrument.

The said Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the above-mentioned mortgages.

[NO FURTHER TEXT ON THIS PAGE]

6990874.1

[Signature Page to 255 Affidavit (CEM)]

**WHEREFORE**, deponent respectfully requests that said Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law.

JASON WISOTSKY

Sworn to before me this
___ day of November, 2019

Notary Public

AVRAHAM Y OBERMEISTER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OB6146516
Qualified in Rockland County
My Commission Expires 05-22-2022

## Mortgage Schedule

All instruments recited herein have been recorded or are intended to be recorded in the Office of the City Register for Kings County

Mortgage 1
| | |
|---|---|
| Mortgagor: | Tony Di Piazza |
| Mortgagee: | George Shapiro |
| Mortgage Amount: | $239,000.00 |
| Dated: | August 3, 1984 |
| Recorded: | August 29, 1984 |
| Reel: | 1545 |
| Page: | 812 |
| Mortgage Tax Paid: | $3,585.00 |

Assignment of Mortgage (1a)
| | |
|---|---|
| Assignor: | George Shapiro |
| Assignee: | Kadilac Mortgage Bankers Ltd. |
| Dated: | April 27, 1988 |
| Recorded: | June 1, 1988 |
| Reel: | 2222 |
| Page: | 446 |

Assigns Mortgage 1.

Multifamily Mortgage, Assignment of Rents and Security Agreement 2
| | |
|---|---|
| Mortgagor: | Tony DiPiazza |
| Mortgagee: | Kadilac Mortgage Bankers Ltd. |
| Mortgage Amount: | $841,981.05 |
| Dated: | April 27, 1988 |
| Recorded: | June 1, 1988 |
| Reel: | 2222 |
| Page: | 450 |
| Mortgage Tax Paid: | $18,945.00 |

Consolidation, Extension and Modification Agreement (2a)
| | |
|---|---|
| Mortgagor: | Tony DiPiazza |
| Mortgagee: | Kadilac Mortgage Bankers Ltd. |
| Dated: | April 27, 1988 |
| Recorded: | June 1, 1988 |
| Reel: | 2222 |
| Page: | 460 |

Which agreement, by its terms, consolidates Mortgages 1 and 2 to form a single lien in the principal amount of $1,010,000.00.

6938972.1

Assignment of Mortgage (2b)
Assignor:                 Kadilac Mortgage Bankers Ltd.
Assignee:                 Federal Home Loan Mortgage Corporation
Dated:                    April 27, 1988
Recorded:                 June 1, 1988
Reel:                     2222
Page:                     448

Assigns Mortgages 1 and 2 as consolidated.

Assignment of Mortgage (2c)
Assignor:                 Federal Home Loan Mortgage Corporation
Assignee:                 Apple Bank for Savings
Dated:                    May 5, 1998
Recorded:                 June 24, 1998
Reel:                     4226
Page:                     2129

Assigns Mortgages 1 and 2 as consolidated.

Mortgage 3
Mortgagor:                25-01 Newkirk Avenue, LLC
Mortgagee:                Apple Bank for Savings
Mortgage Amount:          $89,650.63
Dated:                    May 7, 1998
Recorded:                 June 24, 1998
Reel:                     4226
Page:                     2142
Mortgage Tax Paid:        $1,794.00

Consolidation, Extension and Modification Agreement (3a)
Mortgagor:                25-01 Newkirk Avenue, LLC
Mortgagee:                Apple Bank for Savings
Dated:                    May 7, 1998
Recorded:                 June 24, 1998
Reel:                     4226
Page:                     2150

Which agreement, by its terms, consolidates Mortgages 1, 2 and 3 to form a single lien in the principal amount of $1,020,000.00.

6938972.1

Assignment of Consolidated Security Instruments (3b)
Assignor:                    Apple Bank for Savings
Assignee:                    Federal Home Loan Mortgage Corporation
Dated:                       May 7, 1998
Recorded:                    June 24, 1998
Reel:                        4226
Page:                        2135

Assigns Mortgages 1, 2 and 3 as consolidated.

Assignment of Mortgage (3c)
Assignor:                    Federal Home Loan Mortgage Corporation
Assignee:                    New York Community Bank
Dated:                       May 10, 2004
Recorded:                    May 5, 2005
CRFN:                        2005000262816

Assigns Mortgages 1, 2 and 3 as consolidated.

Mortgage 4
Mortgagor:                   25-01 Newkirk Avenue, LLC
Mortgagee:                   New York Community Bank
Mortgage Amount:             $1,188,840.98
Dated:                       May 28, 2004
Recorded:                    May 5, 2005
CRFN:                        2005000262817
Mortgage Tax Paid:           $32,692.00

Consolidation, Modification and Extension Agreement (4a)
Mortgagor:                   25-01 Newkirk Avenue, LLC
Mortgagee:                   New York Community Bank
Dated:                       May 28, 2004
Recorded:                    May 5, 2005
CRFN:                        2005000262818

Which agreement, by its terms, consolidates Mortgages 1, 2, 3 and 4 to form a single lien in the principal amount of $2,100,000.00.

Assignment of Mortgage (4b)
Assignor:                    New York Community Bank
Assignee:                    NCC Properties Group LLC
Dated:                       January 18, 2012
Recorded:                    February 1, 2012
CRFN:                        2012000045144

Assigns Mortgages 1, 2, 3 and 4 as consolidated.

Gap Mortgage 5
Mortgagor:                Newkirk Realty Holdings 2501 LLC
Mortgagee:                NCC Properties Group LLC
Mortgage Amount:          $2,087,513.18
Dated:                    January 18, 2012
Recorded:                 February 1, 2012
CRFN:                     2012000045147
Mortgage Tax Paid:        $58,450.01

Mortgage Consolidation, Modification and Extension Agreement (5a)
Mortgagor:                Newkirk Realty Holdings 2501 LLC
Mortgagee:                NCC Properties Group LLC
Dated:                    January 18, 2012
Recorded:                 February 1, 2012
CRFN:                     2012000045148

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4 and 5 to form a single lien in the principal amount of $3,900,000.00.

Assignment of Mortgage (5b)
Assignor:                 NCC Properties Group LLC
Assignee:                 BCB Community Bank
Dated:                    March 16, 2012
Recorded:                 March 29, 2012
CRFN:                     2012000124687

Assigns Mortgages 1, 2, 3, 4 and 5 as consolidated.

Mortgage Consolidation, Modification & Extension Agreement (5c)
Mortgagor:                Newkirk Realty Holdings 2501 LLC
Mortgagee:                BCB Community Bank
Dated:                    March 20, 2012
Recorded:                 March 29, 2012
CRFN:                     2012000124688

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4 and 5 to form a single lien in the principal amount of $3,900,000.00.

Assignment of Mortgage (5d)
Assignor:                 BCB Community Bank
Assignee:                 BankUnited, N.A.
Dated:                    October 31, 2013
Recorded:                 November 12, 2013
CRFN:                     2013000464606

Assigns Mortgages 1, 2, 3, 4 and 5 as consolidated.

6938972.1

<u>Gap Mortgage 6</u>
Mortgagor:                    Newkirk Realty Holdings 2501 LLC
Mortgagee:                    BankUnited, N.A.
Mortgage Amount:              $880,940.28
Dated:                        November 5, 2013
Recorded:                     November 12, 2013
CRFN:                         2013000464607
Mortgage Tax Paid:            $24,665.21

<u>Consolidation and Extension Agreement (6a)</u>
Mortgagor:                    Newkirk Realty Holdings 2501 LLC
Mortgagee:                    BankUnited, N.A.
Dated:                        November 5, 2013
Recorded:                     November 12, 2013
CRFN:                         2013000464608

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5 and 6 to form a single lien in the principal amount of $4,650,000.00.

<u>Gap Mortgage 7</u>
Mortgagor:                    Newkirk Realty Holdings 2501 LLC
Mortgagee:                    BankUnited, N.A.
Mortgage Amount:              $1,758,506.78
Dated:                        March 6, 2015
Recorded:                     March 13, 2015
CRFN:                         2015000086729
Mortgage Tax Paid:            $49,238.01

<u>Consolidation and Extension Agreement (7a)</u>
Mortgagor:                    Newkirk Realty Holdings 2501 LLC
Mortgagee:                    BankUnited, N.A.
Dated:                        March 6, 2015
Recorded:                     March 13, 2015
CRFN:                         2015000086730

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5, 6 and 7 to form a single lien in the principal amount of $6,300,000.00.

<u>Assignment of Mortgage (7b)</u>
Assignor:                     BankUnited, N.A.
Assignee:                     Connect One Bank
Dated:                        February 1, 2018
Recorded:                     February 22, 2018
CRFN:                         2018000063134

Assigns Mortgages 1, 2, 3, 4, 5, 6 and 7 as consolidated.

6938972.1

Mortgage (Gap) 8

| | |
|---|---|
| Mortgagor: | FC 2501 LLC, MIZ3 LLC and FC 1191 LLC |
| Mortgagee: | ConnectOne Bank |
| Mortgage Amount: | $1,171,849.07 |
| Dated: | February 1, 2018 |
| Recorded: | February 22, 2018 |
| CRFN: | 2018000063135 |
| Mortgage Tax Paid: | $32,810.40 |

Consolidation, Extension and Modification Agreement (8a)

| | |
|---|---|
| Mortgagor: | FC 2501 LLC, MIZ3 LLC and FC 1191 LLC |
| Mortgagee: | ConnectOne Bank |
| Dated: | February 1, 2018 |
| Recorded: | February 22, 2018 |
| CRFN: | 2018000063136 |

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5, 6, 7 and 8 to form a single lien in the principal amount of $7,100,000.00.

**Assignment of Mortgage (8b)**

| | |
|---|---|
| Assignor: | ConnectOne Bank |
| Assignee: | Capital One, National Association |
| Dated: | November 20, 2019 |
| Recorded | to be duly recorded |

Assigns Mortgages 1, 2, 3, 4, 5, 6, 7, and 8 as consolidated. Upon which Mortgages there remains an unpaid principal balance in the amount of $7,000,687.75.

**Gap Mortgage 9**

| | |
|---|---|
| Mortgagor: | FC 2501 LLC, MIZ3 LLC and FC 1191 LLC |
| Mortgagee: | Capital One, National Association |
| Mortgage Amount: | $1,199,312.25 |
| Dated: | November 20, 2019 |
| Recorded: | to be duly recorded |
| Mortgage Tax Paid: | $33,580.74 |

**SECTION 255 AFFIDAVIT (CEM)**

STATE OF NEW YORK    }
                         }   ss.:
COUNTY OF SUFFOLK    }

JASON WISOTSKY, being duly sworn, deposes and says:

I am the Manager of each of FC 2501 LLC, AND FC 1191 LLC, and the Authorized Signatory of MIZ3 LLC, the owners of the property encumbered by the mortgages hereinafter described and, as such, I am familiar with the facts set forth herein:

**SEE SCHEDULE OF MORTGAGES ATTACHED**

The mortgage tax due on the aforesaid mortgages was paid in full at the time of recording.

There is offered for recording simultaneously herewith a Consolidation, Extension, Modification and Security Agreement (the "**Agreement**") dated November 20, 2019 between FC 2501 LLC, MIZ3 LLC, AND FC 1191 LLC and CAPITAL ONE, NATIONAL ASSOCIATION.  Any mortgage tax due for any new indebtedness secured by the Agreement is being tendered simultaneously therewith.

After the maximum amount became secured thereby no reloans or readvances have become secured thereunder to the date of execution of the said supplemental instrument.

The said Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the above-mentioned mortgages.

[NO FURTHER TEXT ON THIS PAGE]

6990874.1

[Signature Page to 255 Affidavit (CEM)]

**WHEREFORE**, deponent respectfully requests that said Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law.

_____
                              JASON WISOTSKY

Sworn to before me this
15 day of November, 2019

_____
        Notary Public

AVRAHAM Y OBERMEISTER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OB6146516
Qualified in Rockland County
My Commission Expires 05-22-2022

**Mortgage Schedule**

All instruments recited herein have been recorded or are intended to be recorded in the Office of the City Register for Kings County

Mortgage 1
Mortgagor:              Tony Di Piazza
Mortgagee:              George Shapiro
Mortgage Amount:        $239,000.00
Dated:                  August 3, 1984
Recorded:               August 29, 1984
Reel:                   1545
Page:                   812
Mortgage Tax Paid:      $3,585.00

Assignment of Mortgage (1a)
Assignor:               George Shapiro
Assignee:               Kadilac Mortgage Bankers Ltd.
Dated:                  April 27, 1988
Recorded:               June 1, 1988
Reel:                   2222
Page:                   446

Assigns Mortgage 1.

Multifamily Mortgage, Assignment of Rents and Security Agreement 2
Mortgagor:              Tony DiPiazza
Mortgagee:              Kadilac Mortgage Bankers Ltd.
Mortgage Amount:        $841,981.05
Dated:                  April 27, 1988
Recorded:               June 1, 1988
Reel:                   2222
Page:                   450
Mortgage Tax Paid:      $18,945.00

Consolidation, Extension and Modification Agreement (2a)
Mortgagor:              Tony DiPiazza
Mortgagee:              Kadilac Mortgage Bankers Ltd.
Dated:                  April 27, 1988
Recorded:               June 1, 1988
Reel:                   2222
Page:                   460

Which agreement, by its terms, consolidates Mortgages 1 and 2 to form a single lien in the principal amount of $1,010,000.00.

6938972.1

Assignment of Mortgage (2b)
Assignor:                  Kadilac Mortgage Bankers Ltd.
Assignee:                  Federal Home Loan Mortgage Corporation
Dated:                     April 27, 1988
Recorded:                  June 1, 1988
Reel:                      2222
Page:                      448

Assigns Mortgages 1 and 2 as consolidated.

Assignment of Mortgage (2c)
Assignor:                  Federal Home Loan Mortgage Corporation
Assignee:                  Apple Bank for Savings
Dated:                     May 5, 1998
Recorded:                  June 24, 1998
Reel:                      4226
Page:                      2129

Assigns Mortgages 1 and 2 as consolidated.

Mortgage 3
Mortgagor:                 25-01 Newkirk Avenue, LLC
Mortgagee:                 Apple Bank for Savings
Mortgage Amount:           $89,650.63
Dated:                     May 7, 1998
Recorded:                  June 24, 1998
Reel:                      4226
Page:                      2142
Mortgage Tax Paid:         $1,794.00

Consolidation, Extension and Modification Agreement (3a)
Mortgagor:                 25-01 Newkirk Avenue, LLC
Mortgagee:                 Apple Bank for Savings
Dated:                     May 7, 1998
Recorded:                  June 24, 1998
Reel:                      4226
Page:                      2150

Which agreement, by its terms, consolidates Mortgages 1, 2 and 3 to form a single lien in the principal amount of $1,020,000.00.

6938972.1

Assignment of Consolidated Security Instruments (3b)
Assignor:                Apple Bank for Savings
Assignee:                Federal Home Loan Mortgage Corporation
Dated:                   May 7, 1998
Recorded:                June 24, 1998
Reel:                    4226
Page:                    2135

Assigns Mortgages 1, 2 and 3 as consolidated.

Assignment of Mortgage (3c)
Assignor:                Federal Home Loan Mortgage Corporation
Assignee:                New York Community Bank
Dated:                   May 10, 2004
Recorded:                May 5, 2005
CRFN:                    2005000262816

Assigns Mortgages 1, 2 and 3 as consolidated.

Mortgage 4
Mortgagor:               25-01 Newkirk Avenue, LLC
Mortgagee:               New York Community Bank
Mortgage Amount:         $1,188,840.98
Dated:                   May 28, 2004
Recorded:                May 5, 2005
CRFN:                    2005000262817
Mortgage Tax Paid:       $32,692.00

Consolidation, Modification and Extension Agreement (4a)
Mortgagor:               25-01 Newkirk Avenue, LLC
Mortgagee:               New York Community Bank
Dated:                   May 28, 2004
Recorded:                May 5, 2005
CRFN:                    2005000262818

Which agreement, by its terms, consolidates Mortgages 1, 2, 3 and 4 to form a single lien in the principal amount of $2,100,000.00.

Assignment of Mortgage (4b)
Assignor:                New York Community Bank
Assignee:                NCC Properties Group LLC
Dated:                   January 18, 2012
Recorded:                February 1, 2012
CRFN:                    2012000045144

Assigns Mortgages 1, 2, 3 and 4 as consolidated.

6938972.1

Gap Mortgage 5
| | |
|---|---|
| Mortgagor: | Newkirk Realty Holdings 2501 LLC |
| Mortgagee: | NCC Properties Group LLC |
| Mortgage Amount: | $2,087,513.18 |
| Dated: | January 18, 2012 |
| Recorded: | February 1, 2012 |
| CRFN: | 2012000045147 |
| Mortgage Tax Paid: | $58,450.01 |

Mortgage Consolidation, Modification and Extension Agreement (5a)
| | |
|---|---|
| Mortgagor: | Newkirk Realty Holdings 2501 LLC |
| Mortgagee: | NCC Properties Group LLC |
| Dated: | January 18, 2012 |
| Recorded: | February 1, 2012 |
| CRFN: | 2012000045148 |

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4 and 5 to form a single lien in the principal amount of $3,900,000.00.

Assignment of Mortgage (5b)
| | |
|---|---|
| Assignor: | NCC Properties Group LLC |
| Assignee: | BCB Community Bank |
| Dated: | March 16, 2012 |
| Recorded: | March 29, 2012 |
| CRFN: | 2012000124687 |

Assigns Mortgages 1, 2, 3, 4 and 5 as consolidated.

Mortgage Consolidation, Modification & Extension Agreement (5c)
| | |
|---|---|
| Mortgagor: | Newkirk Realty Holdings 2501 LLC |
| Mortgagee: | BCB Community Bank |
| Dated: | March 20, 2012 |
| Recorded: | March 29, 2012 |
| CRFN: | 2012000124688 |

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4 and 5 to form a single lien in the principal amount of $3,900,000.00.

Assignment of Mortgage (5d)
| | |
|---|---|
| Assignor: | BCB Community Bank |
| Assignee: | BankUnited, N.A. |
| Dated: | October 31, 2013 |
| Recorded: | November 12, 2013 |
| CRFN: | 2013000464606 |

Assigns Mortgages 1, 2, 3, 4 and 5 as consolidated.

6938972.1

Gap Mortgage 6
Mortgagor:                          Newkirk Realty Holdings 2501 LLC
Mortgagee:                          BankUnited, N.A.
Mortgage Amount:                    $880,940.28
Dated:                              November 5, 2013
Recorded:                           November 12, 2013
CRFN:                               2013000464607
Mortgage Tax Paid:                  $24,665.21

Consolidation and Extension Agreement (6a)
Mortgagor:                          Newkirk Realty Holdings 2501 LLC
Mortgagee:                          BankUnited, N.A.
Dated:                              November 5, 2013
Recorded:                           November 12, 2013
CRFN:                               2013000464608

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5 and 6 to form a single lien in the principal amount of $4,650,000.00.

Gap Mortgage 7
Mortgagor:                          Newkirk Realty Holdings 2501 LLC
Mortgagee:                          BankUnited, N.A.
Mortgage Amount:                    $1,758,506.78
Dated:                              March 6, 2015
Recorded:                           March 13, 2015
CRFN:                               2015000086729
Mortgage Tax Paid:                  $49,238.01

Consolidation and Extension Agreement (7a)
Mortgagor:                          Newkirk Realty Holdings 2501 LLC
Mortgagee:                          BankUnited, N.A.
Dated:                              March 6, 2015
Recorded:                           March 13, 2015
CRFN:                               2015000086730

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5, 6 and 7 to form a single lien in the principal amount of $6,300,000.00.

Assignment of Mortgage (7b)
Assignor:                           BankUnited, N.A.
Assignee:                           Connect One Bank
Dated:                              February 1, 2018
Recorded:                           February 22, 2018
CRFN:                               2018000063134

Assigns Mortgages 1, 2, 3, 4, 5, 6 and 7 as consolidated.

6938972.1

Mortgage (Gap) 8
Mortgagor:                    FC 2501 LLC, MIZ3 LLC and FC 1191 LLC
Mortgagee:                    ConnectOne Bank
Mortgage Amount:              $1,171,849.07
Dated:                        February 1, 2018
Recorded:                     February 22, 2018
CRFN:                         2018000063135
Mortgage Tax Paid:            $32,810.40

Consolidation, Extension and Modification Agreement (8a)
Mortgagor:                    FC 2501 LLC, MIZ3 LLC and FC 1191 LLC
Mortgagee:                    ConnectOne Bank
Dated:                        February 1, 2018
Recorded:                     February 22, 2018
CRFN:                         2018000063136

Which agreement, by its terms, consolidates Mortgages 1, 2, 3, 4, 5, 6, 7 and 8 to form a single lien in the principal amount of $7,100,000.00.

**Assignment of Mortgage (8b)**
Assignor:                     ConnectOne Bank
Assignee:                     Capital One, National Association
Dated:                        November 20, 2019
Recorded                      to be duly recorded

Assigns Mortgages 1, 2, 3, 4, 5, 6, 7, and 8 as consolidated. Upon which Mortgages there remains an unpaid principal balance in the amount of $7,000,687.75.

**Gap Mortgage 9**
Mortgagor:                    FC 2501 LLC, MIZ3 LLC and FC 1191 LLC
Mortgagee:                    Capital One, National Association
Mortgage Amount:              $1,199,312.25
Dated:                        November 20, 2019
Recorded:                     to be duly recorded
Mortgage Tax Paid:            $33,580.74